**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RHN Incorporated,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>CNA National Warranty Corporation, et al.,<br><br>    Defendants/Counter-Claimants. | No. CV-19-02960-PHX-GMS<br>**LEAD CASE**<br><br>No. CV-19-4516-PHX-GMS<br><br>**ORDER** |
| CNA National Warranty Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>RHN Incorporated, et al.,<br><br>    Defendants. | |

Pending before the Court is Defendant Counter-Claimant CNA et al. ("CNA")'s Motion for Sanctions (Doc. 43). For the following reasons the motion is granted in part and denied in part.

## BACKGROUND

On February 13, 2020 the parties participated in a teleconference with the Court about RHN Inc. et al. ("RHN")'s alleged failure to comply with the discovery obligations imposed by the Mandatory Initial Discovery Pilot ("MIDP") project. RHN admittedly limited its initial investigation and production to Defendant Hooman Nissani and David

Arnold, who provide technology support services to RHN and conducted the searches at issue. As a result, CNA claimed RHN failed to (1) conduct a reasonable investigation; (2) identify custodians who possess relevant ESI; and (3) collect, review and produce relevant information. RHN asserted that it produced all relevant documents because Mr. Nissani was the only person who had communications with CNA and other relevant parties in relation to the formation and terms of the Dealership Override Agreement ("Override Agreement"), which forms part of the dispute in this action. During the February 13, 2020 teleconference the Court invited CNA to file a motion for sanctions to demonstrate that RHN's production was deficient. This motion followed.

**DISCUSSION**

General Order 17-08 codifies the MIDP program. It requires parties to (1) investigate and identify all relevant custodians who have or would be expected to have relevant information; (2) investigate and identify where all relevant information is located; and (3) properly search and produce all relevant information in accordance with the parties' ESI protocol. Relevant information under the MIDP includes information that may be relevant to *any parties claims or defenses.*

Mr. Nissani explained he "understood the parameters of the search to include communications about the formation and terms of the [O]verride [A]greement." (Doc 44-2 at 2.) RHN never claims to have investigated, searched, or produced any information with respect to the several other claims and defenses at issue in this complex counter-action suit.[1] Thus, the Court finds RHN failed to comply with the MIDP's obligations.

---

[1] CNA identifies the following claims and defenses at issue in this action:
1. How the "business arrangement to sell automobile warranties" was presented to RHN;
2. RHN's understanding of the business arrangement to sell automobile warranties;
3. The negotiation and formation of the Dealership Override Agreement with Advance Payment ("Override Agreement");
4. RHN's performance or breach under the Override Agreement;
5. RHN's contention that CNA agreed to modify the terms of the Override Agreement;
6. RHN's contention that CNA failed to comply with the Override Agreement;
7. The negotiation and formation of a profit-sharing agreement;
8. RHN's contention that CNA failed to comply with the parties' profit-sharing agreement;
9. CNA's contention that Mr. Nissani's financial statements were false; and

Even if the formation and terms of the Override Agreement comprised the only dispute in this action, RHN's production was deficient. First, RHN claims that Mr. Nissani was the only person with decision-making authority and, therefore, was the only person who possessed relevant communications. However, Mr. Arnold admits that RHN failed to search all of Mr. Nissani's relevant email addresses. (Doc. 44-1 at 2.) Second, Mr. Nissani claims that "[t]he parties agreed to remove duplicate documents across custodians, and as a result, there is no reason to attempt to search for and collect duplicate emails from [other custodians], when Hooman Nissani was on the same emails." This argument is unavailing. The potential for duplicate emails does not excuse RHN from identifying all relevant custodians, identifying the whereabouts of all relevant ESI, and producing all relevant information. If a search of a single custodian was envisioned, the duplicate policy "across custodians" would be superfluous. RHN's argument that CNA was not prejudiced by its limited production because Mr. Nissani was copied on the emails that involved other custodians is irrelevant and cannot be sufficiently demonstrated when the documents possessed by the other custodians have never been searched.

Lastly, Mr. Nissani claims to have reviewed his SMS messages to determine which messages were relevant for production. However, given Mr. Nissani's admitted misunderstanding of his production obligations, the Court finds RHN's counsel is more equipped to make this determination. In light of the foregoing, the Court orders RHN to conduct a reasonable investigation, collection, review, and production of the ESI relevant to *all* claims and defenses at issue in this case from *all* potential custodians of such documents. The Court, however, finds no basis to grant CNA's requested "temporary reprieve from expending further resources in finishing CNA's privilege log, redactions, and document disclosures." Accordingly,

**IT IS HEREBY ORDERED** that Defendant Counter-Claimant CNA's Motion for Sanctions (Doc. 43) is **GRANTED** in part and **DENIED** in part.

---

10. RHN's defense that Mr. Nissani's financial statements were accurate. (Doc. 46 at 3.)

- 3 -

**IT IS FURTHER ORDERED** that RHN shall:

1. Fully investigate the case by having RHN's counsel interview RHN employees and agents within **fourteen (14) days** of the date of this order;

2. Identify the names of all custodians who have ESI relevant to any party's claim or defense within **fourteen (14) days** of the date of this order;

3. Identify where – email, server, laptops, cellphones, etc. – the ESI is located within **twenty-one (21) days** of the date of this order;

4. Hire a third-party, independent vendor to search and collect the ESI from the identified sources and custodians in accordance with the parties' ESI protocol within **thirty (30) days** of the date of this order;

5. Have RHN's counsel review the collected information and determine what is/is not relevant to all claims and defenses within **forty (40) days** of the date of this order;

6. Have RHN's vendor produce the relevant information **forty (40) days** from the date of this Order and in accordance with the parties' ESI protocol;

7. Pay CNA the fees and costs it incurred in pursing RHN's compliance with the MIDP. CNA must submit documentation in compliance with LRCiv 54.2 for the Court to determine the amount of the sanctions award within **thirty (30) days** of the date of this order.

**IT IS FURTHER ORDERED** denying CNA a temporary reprieve from finishing its privilege log, redactions, and document disclosures. CNA shall continue discovery in accordance with the rules of the Civil Procedure, Local Rules, and Case Management Order (Doc. 41).

Dated this 9th day of April, 2020.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge