**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RHN Incorporated,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>CNA National Warranty Corporation, et al.,<br><br>    Defendants/Counter-Claimants. | No. CV-19-02960-PHX-GMS<br>**LEAD CASE**<br><br>No. CV-19-4516-PHX-GMS<br><br>**ORDER** |
| CNA National Warranty Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>RHN Incorporated, et al.,<br><br>    Defendants. | |

Pending before the Court is CNA National Warranty Corporation ("CNA")'s Motion for Leave to File First Amended Complaint. (Doc. 49.) For the following reasons, the Motion is granted.

**BACKGROUND**

CNA and RHN Incorporated ("RHN"), an owner-operator of multiple automobile dealerships, entered into an agreement in which RHN would sell CNA's vehicle service contracts ("VSCs"). As part of the arrangement, CNA agreed to give RHN an advance payment of $5 million (the "Advance"). Hooman Nissani, President of RHN, executed a

personal guarantee assuring CNA that it could look to his personal assets to be made whole in the event RHN breached its agreement with CNA and failed to pay back the Advance. Before executing the guarantee, Mr. Nissani represented through a written financial statement that he had significant assets including real and personal property located in California.

CNA originally brought six claims against Mr. Nissani, RHN, and associated dealerships. CNA's claims included breach of contract, breach of the covenant of good faith and fair dealing, and intentional and negligent misrepresentation. CNA now seeks to add six new defendants ("Proposed LLC Defendants" or "LLCs")—six LLCs of which Mr. Nissani is the managing member that allegedly own various properties Mr. Nissani claimed to own in his financial statement used to induce the Advance—and a seventh claim of fraudulent transfer. Mr. Nissani objects to CNA's request for leave to amend on the grounds that the amendment is futile and unduly delayed.

## DISCUSSION

**I.     Legal Standard**

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Whether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *In re Rogstad*, 126 F.3d 1224, 1228 (9th Cir. 1997). Leave to amend lies within "the sound discretion of the trial court"; however, this Circuit has instructed that Rule 15's policy favoring amendment "should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The party opposing amendment bears the burden of establishing futility or one of the other permissible reasons for denying a motion to amend. *Angel Jet Servs., L.L.C. v. Raytheon Health Benefits Plan*, No. 2:10-CV-01385-PHX, 2011 WL 744917, at *2 (D. Ariz. Feb. 25, 2011).

## II. Analysis

### A. Futility

"[L]eave to amend may be denied . . . if amendment of the complaint would be futile." *Dakota Territory Tours ACC v. Sedona-Oak Creek Airport Auth. Inc.*, 383 F. Supp. 3d 885, 899 (D. Ariz. 2019) (quoting *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988). "A proposed amendment is futile if it fails to state a cognizable claim and would be subject to dismissal under Rule 12(b)(6)." *Simms v. DNC Parks & Resorts at Tenaya, Inc.*, No. 1:13-CV-2075 SMS, 2015 WL 1956441, at *2 (E.D. Cal. Apr. 29, 2015) (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, 556 U.S. at 678. In the futility context, however, all inferences should be made in favor of granting leave to amend. *Angel Jet Servs.*, 2011 WL 74417, at *2 (citing *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir.1999)).

#### 1. Alter Ego Liability

Because the six Proposed LLC Defendants were not parties to the underlying agreement, Plaintiff seeks to add the LLCs under an alter ego theory of liability. Traditional alter ego liability, or veil piercing, holds an individual liable for the acts of a corporation. *Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal. App. 4th 1510, 1513 (2008) ("Under the standard alter ego doctrine, . . . the corporate form may be disregarded and the corporate veil pierced so that an individual shareholder may be held personally liable for claims against the corporation.") Plaintiff, however, seeks to invoke reverse veil piercing by

holding the LLCs liable for the acts of Mr. Nissani. *See Curci Investments, LLC v. Baldwin,* 14 Cal. App. 5th 214, 221 (Ct. App. 2017) ("Rather than seeking to hold an individual responsible for the acts of an entity, reverse veil piercing seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider."). The parties agree that alter ego claims concerning LLCs are governed by the law of the state of formation—in this case, California and Delaware. *See TFH Properties, LLC v. MCM Dev.*, LLC, CV-09-8050-PCT-FJM, 2010 WL 2720843, at *5 (D. Ariz. July 9, 2010) (applying the alter ego law of the state of formation where the plaintiff sought to pierce the veil of an LLC). California courts have acknowledged reverse veil piercing as an equitable remedy, *Curci Investments, LLC v. Baldwin,* 14 Cal. App. 5th 214 (Ct. App. 2017) (explaining that "reverse veil piercing may be available" against a judgment debtor's LLC, but remanding the issue to the trial court); Delaware courts have yet to apply the doctrine to LLCs, *Sky Cable, LLC v. Coley*, No. 5:11CV00048, 2016 WL 3926492, *13 (W.D. Va. July 18, 2016), *aff'd in part, appeal dismissed in part sub nom. Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375 (4th Cir. 2018) (noting that "the court is not aware of any authority applying an outsider reverse veil-piercing theory under Delaware law").

### a. Proposed Delaware Defendants[1]

Mr. Nissani argues that adding the Delaware LLCs[2] is futile because the claims against them are not permitted under Delaware law. Delaware courts, however, have not prohibited reverse veil piercing of an LLC as Mr. Nissani contends. To the contrary, the Delaware Court of Chancery has noted that such a theory may be viable if "properly presented." *Cancan Dev., LLC v. Manno*, No. CV 6429-VCL, 2015 WL 3400789, at *22 (Del. Ch. May 27, 2015), *aff'd*, 132 A.3d 750 (Del. 2016). To the extent Mr. Nissani asserts that Delaware's charging statute, 6 Del. C. § 18-703, is the "exclusive remedy" by which a judgment creditor may reach an LLC member's assets, he falls short. Mr. Nissani fails to cite any authority applying this statute in a manner that prohibits reverse veil piercing.

---

[1] Oral argument was held on this issue on August 5, 2020.

[2] Of the six Proposed LLC Defendants, two were formed in Delaware—Kip Properties, LLC and Redondo Prop., LLC ("Delaware LLCs").

- 4 -

Moreover, other courts interpreting the statute have concluded that reverse veil piercing is not the type of equitable remedy precluded by the statute. *Sky Cable*, 886 F.3d at 388-89 ("[B]ecause piercing the veil of an LLC effectively eliminates the legal status of the LLC in very narrow circumstances in which fraud or other injustice has been established, that remedy is unlike the various common law seizure remedies listed in the exclusivity provision of the Delaware LLC charging statute."). Because Mr. Nissani has not met his burden of establishing futility, CNA's Motion to Amend to add the Delaware LLCs is granted.

### b. Proposed California Defendants

California opened the door to reverse veil piercing of an LLC in *Curci Investments, LLC v. Baldwin*. 14 Cal. App. 5th at 221. In *Curci* the court explained that veil piercing, traditional or reverse, is an equitable remedy that depends on the "particular circumstances of each particular case." *Id.* The primary concerns of invoking reverse veil piercing are harming innocent shareholders, or members in the LLC context, and using an equitable remedy where a legal remedy is available. *Id.* at 222. To address these concerns, courts are directed to consider the traditional alter ego factors as well as the availability of alternative remedies. *Id.* at 224. However, no one factor is dispositive. *Id.* ("As with traditional veil piercing, there is no precise litmus test. Rather, the key is whether the ends of justice require disregarding the separate nature of [the LLC] under the circumstances.").

Mr. Nissani first argues that reverse veil piercing is not available as a matter of law with respect to the California LLCs[3] because he is not the sole member of the proposed LLC defendants and because CNA has an adequate remedy at law through its claims already asserted in this action. However, the proposed First Amended Complaint ("FAC") alleges that Mr. Nissani is the sole member of the California LLCs. To assess futility, the Court must assume all facts alleged in the proposed complaint are true; it would be inappropriate to resolve a disputed fact at this stage of the litigation. Moreover, while it is

---

[3] Four of the six Proposed LLC Defendants were formed in California—H.S.K. Investments, LLC; Centinela Car Wash Properties, LLC; 737 N. La Brea, LLC; and 3170 Cherry Avenue Property, LLC ("California LLCs").

true that the FAC does not claim an absence of an available legal remedy, no one factor is dispositive. The Court agrees that the existence of an available remedy at law would weigh substantially against invoking reverse veil piercing; however, the Court declines to make such a determination at this stage of the litigation.

Mr. Nissani next argues that the proposed FAC fails to provide sufficient factual allegations to establish the unity of interest necessary to invoke alter ego liability. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015) (explaining that under California law, a party seeking to invoke reverse veil piercing must allege (1) "a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) that, "if the acts are treated as those of the corporation alone, an inequitable result will follow"). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the elements of alter ego liability." *Gerritsen*, 112 F. Supp. 3d at 1042.

A plaintiff may plead unity of interest by relying on a variety of factors, including but not limited to: comingling of funds or other assets, holding out by an individual that he is personally liable for the debts of the entity, failure to adhere to corporate formalities, undercapitalization, and "the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability." *Gerritsen*, 112 F. Supp. 3d at 1043. CNA alleges that Mr. Nissani represented to CNA that he personally owned the properties actually owned by four of the Proposed LLC Defendants to induce CNA to provide the $5 million Advance. CNA further claims that after the Advance was issued, Mr. Nissani formed the two remaining LLCs and transferred his ownership interest in additional properties listed to induce the Advance to the newly formed LLCs. CNA claims that the LLCs exist for no other purpose than "to avoid making payments owed to CNA." (Doc. 49-2 at 10.) These facts are enough to allow the court to draw the reasonable inference that the proposed LLCs share a unity of interest with Mr. Nissani. CNA's Motion to Amend is granted with respect to adding the California LLCs under an alter ego theory

of liability.

### c. Personal Jurisdiction

Lastly, Mr. Nissani claims the proposed FAC fails to allege sufficient minimum contacts between the LLCs and Arizona to warrant exercising personal jurisdiction over them.[4] *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004) (explaining that for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice"). However, at the pleading stage, the plaintiff need only allege a prima facie case of jurisdiction. *Id.* at 800.

CNA argues that Mr. Nissani submitted "himself and his property" to this Court's jurisdiction as part of his personal guarantee.[5] *See* (Doc. 56-2 at 3) ("The Undersigned [Mr. Nissani] hereby irrevocably and unconditionally . . . [s]ubmits for himself and his property in legal action or proceeding relating to this Personal Guaranty and Suretyship Agreement, or for the recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of the courts of Maricopa county in the state of Arizona.") CNA asserts that "property," as stated in the Personal Guarantee, includes the Proposed LLC Defendants, which according to the proposed FAC are solely or majority owned by Mr. Nissani.[6] Moreover, because Mr. Nissani is the managing member of each of the Proposed LLC Defendants and each of the LLCs owns real property that Mr. Nissani represented as his own to induce CNA, an Arizona Company, to accept the Personal Guarantee and issue the Advance, the Proposed LLC Defendants could reasonably anticipate being hailed into court in Arizona. *See World-Wide Volkswagen Corp. v.*

---

[4] The parties do not contest that general jurisdiction is not applicable to the proposed LLC Defendants.

[5] Courts may consider facts asserted for the first time in the plaintiff's opposition papers when considering whether to grant leave to amend. *Broam v. Bogan*, 320 F.3d 1023, 1034n.2 (9th Cir. 2003).

[6] The proposed FAC claims that Mr. Nissani owns 100% of each Proposed LLC Defendant, except for Redondo Prop., LLC of which it claims he is a majority owner.

- 7 -

*Woodson*, 444 U.S. 286, 287 (1980) ("The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there."). Thus, CNA has stated a prima facie case of jurisdiction over the proposed LLC Defendants. This Order, however, does not prejudice the LLCs' right to assert a lack of jurisdiction on their own behalf.

### 2. Fraudulent Transfer Allegations

CNA also seeks leave to assert a fraudulent transfer claim against Mr. Nissani and the two LLCs allegedly formed and funded after CNA issued the advance.[7] Under A.R.S. § 44-1004(A), "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." Mr. Nissani claims the proposed FAC's fraudulent transfer allegations fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) required for claims of fraud. To satisfy Rule 9, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Here, the proposed FAC clearly states that after the Advance was issued, Mr. Nissani and his wife transferred properties listed in the Financial Statement as owned by Mr. Nissani to two newly formed LLCs that are managed by Mr. Nissani. The proposed FAC also alleges that Mr. Nissani's intent to hinder, delay or defraud may be inferred by his retention of control over the properties after the transfer and the fact that the transfer was made close in time to when a substantial debt was incurred. These factual allegations sufficiently detail the who, what, when, where, and how of the alleged fraudulent transfer. CNA's motion for leave to assert its fraudulent transfer claim is granted.

### B. Undue Delay

Mr. Nissani asserts that CNA's amendment is unduly delayed because CNA knew

---

[7] These LLCs are Kip Properties, LLC and Redondo Prop., LLC.

of the existence of the LLCs and the properties owned by each as early as two years ago. However, mere knowledge of the LLCs existence does not necessarily warrant asserting claims against them. CNA claims any alleged delay was due to Mr. Nissani's failure to timely disclose pertinent information about the LLCs needed to adequately allege the claims against them. Moreover, even if CNA unduly delayed in seeking leave to amend its complaint, "delay alone is insufficient to justify denial of leave to amend." *Klapper v. Los Angeles*, 193 Fed. Appx. 661, 663 (9th Cir. 2006).

## CONCLUSION

CNA has adequately alleged facts to state a claim of fraudulent transfer and that lead to a reasonable inference that the proposed LLC defendants are alter egos of Hooman Nissani. Finding no justification to deny CNA's request for leave to amend,

**IT IS HEREBY ORDERED** that CNA's Motion for Leave to File First Amended Complaint (Doc. 49) is **GRANTED.** Pursuant to F.R.Civ.P. 15, CNA shall file its First Amended Complaint forthwith.

Dated this 5th day of August, 2020.

_G. Murray Snow_
Chief United States District Judge