Tina M. Ezzell (SBN: 013825)
Gayathiri Shanmuganatha (SBN: 030745)
Jessica I. Brown (SBN: 034679)

**TB** **T I F F A N Y & B O S C O**
_P.A._

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
TELEPHONE: (602) 452-2747
FACSIMILE:   (602) 255-0103
E-Mail: tme@tblaw.com
E-Mail: gs@tblaw.com
E-Mail: jib@tblaw.com
_Attorneys for CNA National Warranty Corp_

G. David Godwin, CA Bar No. 148272
david.godwin@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery St., Suite 2600
San Francisco, CA 94111
Telephone:  415.989.5900
Facsimile:  415.989.0932
_Attorneys for CNA National Warranty Corp._

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| RHN Incorporated, | Case No.  CV-19-02960-GMS |
| Plaintiff/Counter-Defendant, | **LEAD CASE** |
| v. | No. CV-19-04516-PHX-GMS |
| CNA National Warranty Corporation, et al., | |
| Defendant/Counter-Claimant. | **PLAINTIFF CNA NATIONAL WARRANTY CORPORATION'S MOTION FOR SANCTIONS** |
| CNA National Warranty Corporation, | |
| Plaintiff, | |
| v. | |
| RHN Incorporated, et al., | |

1

2
|   Defendants.   |
| --- |

3

4      Hundreds of emails,  eighteen months, six meet and confers, four court conferences,

5   four court orders, and two sanctions later, RHN[1] and its counsel still fail to comply with, let

6   alone  have  any  regard  for,  the  Federal  Rules  of  Civil  Procedure  (the  "Rules"),  the

7   Mandatory  Initial  Discovery  Pilot  Program  (the  "MIDP"),  the  Court,  and  the  Court's

8   orders..  [**Ex. A**, Decl. of G. Shanmuganatha enclosing Timeline of RHN's Failures &

9   CNAN's & the Court's Efforts as **Ex. A-1**, ¶¶ 1-3].  RHN and its counsel must be sanctioned

10   for  willfully  disobeying  numerous  orders,  their  vexatious  and  bad  faith  conduct,  and

11   absolute disregard for their duty of candor to the Court and opposing counsel pursuant to

12   Rules 16(f)(1)(C), 16(f)(2), 37(b)(2), 41(b), and the Court's inherent powers.

13                              **FACTUAL BACKGROUND**

14      The Court ordered RHN to produce their ESI and MIDP responses by January 31,

15   2020. [Doc. 41]. As articulated in CNAN's Motion for Sanctions [Doc. 43], RHN's

16   production was woefully deficient.  The Court agreed and found that "RHN failed to comply

17   with  the  MIDP's  obligations."  [Doc. 50, 2:21].   Accordingly,  on  April 9,  2020  ("The

18   Order"), the Court ordered RHN *and* its counsel to:

19
20      1.   Fully investigate the case by having RHN's counsel interview RHN
             employees and agents [by April 23, 2020];

21      2.   Identify the names of all custodians who have ESI relevant to any
             party's claim or defense [by April 23, 2020];

22      3.   Identify where – email, server, laptops, cellphones, etc. – the ESI is
             located [by April 30, 2020];

23
24      4.   Hire a third-party, independent vendor to search and collect the ESI
             from the identified sources and custodians in accordance with the
             parties' ESI protocol [by May 9, 2020];

25      5.   Have RHN's counsel review the collected information and determine
             what is/is not relevant to all claims and defenses [by May 19, 2020];

26

27   [1] For this motion, RHN means RHN Inc., RHH Automotive, Inc., RHC Automotive, Inc.,
     NBA Automotive, Inc., R & H Automotive Group, Inc., Hooman Nissani, and Melody

28   Nissani.

6.  Have RHN's vendor produce the relevant information [by May 19, 2020] and in accordance with the parties' ESI protocol;

7.  Pay CNAN the fees and costs it incurred in pursing RHN's compliance with the MIDP.

[Doc. 50, 4:2-20]. As the following discussion details, RHN and its counsel failed to comply with every aspect of The Order.

**A. <u>RHN's Counsel did not Fully Investigate the Case.</u>**

On April 23, 2020, the date by which RHN was to identify "the names of all custodians who have ESI," Mr. Kawabata interviewed Hooman Nissani, David Arnold, Rayan Nissani, and Blanca Vargas. [Doc. 93, ¶ 14]. Outside of interviewing four individuals, RHN's counsel did not investigate this case as ordered. For example, counsel did not review CNAN's production, Doxsee-Foster's production, RHN's production, or interview RHN's agents at Doxsee-Foster to identify salient custodians. [*See* Ex. A-42, April 30, 2020 Email from G. Shanmuganatha; Doc. 92; Doc. 93]. RHN's and its counsel's willful, deliberate, and bad-faith failure to "fully investigate the case" necessarily led to RHN and its counsel's failure to identify the names of all custodians, the sources of ESI, the facts/legal theories that are relevant to this case, and to produce documents that are relevant to all parties' claims and defenses. [*See also* Mot. to Compel [Doc.112]].

**B. <u>RHN's Counsel Failed to Name All Custodians who have Relevant ESI.</u>**

RHN was ordered to "[i]dentify **the names** of all custodians" who have relevant ESI. Rather than complying with The Order, on April 23, 2020, RHN's counsel proclaimed "**[w]e have no additional custodians to identify at this time**." [Ex. A-81, Apr. 30, 2020 E-Mail from M. Kawabata]. This proclamation does not come close to satisfying the letter or spirit of The Order. Moreover, as demonstrated below, the proclamation was false.

| Date | Communication | Custodians | # of Pivots |
|------|---------------|------------|-------------|
| April 23, 2020 | Email from M. Kawabata | No names provided. [Ex. A-81, Apr. 30, 2020 E-Mail from M. Kawabata]. | |
| **AFTER DEADLINE TO IDENTIFY CUSTODIANS PASSED** | | | |
| April 29, 2020 | Meet and confer between | Ms. Garvis-Wright represents the relevant custodians are the ones identified in RHN's | Pivot # 1 |

| | | | |
|---|---|---|---|
| | CNAN's Counsel and RHN's Counsel | November 25, 2019 First Supplemental MIDP: Hooman Nissani, Rayan Nissani, David Arnold, Blanca Vargas, Vannak Kong, and Maria Virrueta. [Ex. A-42, Apr. 30, 2020 Email from G. Shanmuganatha] | |
| April 29, 2020 | Email from Ms. Garvis-Wright | Ms. Garvis-Wright proclaims that "there are no additional ESI custodians over and above those previously identified, namely: Hooman Nissani, Rayan Nissani, and David Arnold." [Ex. A-41, Apr. 29, 2020 Email from K. Garvis-Wright] | Pivot # 2 |
| April 30, 2020<br>May 21, 2020<br>May 29, 2020<br>June 5, 2020 | E-Mail from G. Shanmuganatha | Ms. Shanmuganatha emailed RHN's counsel about the change in her story, stating that identifying Hooman Nissani, Rayan Nissani, and David Arnold as the *only* custodians with relevant information demonstrates counsel did not conduct the investigation ordered by the Court. [Ex. A-42, Apr. 30, 2020 Email from G. Shanmuganatha; Ex. A-48, May 21, 2020 Email from G. Shanmuganatha; Ex. A-52, May 29, 2020 Email from G. Shanmuganatha; Ex. A-53, Jun. 5, 2020 Email from G. Shanmuganatha]. Ms. Garvis-Wright never responded. | |
| August 18, 2020 | Conference with the Court | The Court orders RHN and its counsel to detail the efforts they took to comply with the Court's April 9, 2020 Order, including identifying the custodians, their contact information, and where the ESI is located. | |
| August 25, 2020 | K. Garvis-Wright Declaration | The relevant ESI custodians are: Alex Patti, Bill Murray, Blanca Vargas, David Arnold, Estela Galindo, Hooman Nissani, Jessica Virrueta, Maria Virrueta, Vannak Kong. [Doc. 92, ¶ 16].<br><br>Missing from counsel's latest list are Rayan Nissani (identified on 4/29/2020 as an ESI custodian) and Babak Sarraf (signatory to the Override Agreement-the heart of this case). Moreover, Ms. Garvis-Wright does not identify how she came up with this *new* list of custodians. Is it the result of counsel's Court-ordered investigation? Or a regurgitation of Mr. Nissani's newest contentions? | Pivot # 3 |

## C. RHN's Counsel Failed to Identify Where the ESI was Located.

On April 30, 2020, Mr. Kawabata disclosed that RHN's ESI was located on:

1.   Email servers in the possession of Hooman Nissani;

2.   Computers in the possession of Hooman Nissani and David Arnold; and

3.   Cell phones in the possession of Hooman Nissani, David Arnold, and Rayan Nissani.

1   [Ex. A-43, Apr. 30, 2020 E-Mail from M. Kawabata].  RHN failed to identify the email

2   accounts containing the relevant information or Rayan Nissani's computer, laptops, or

3   iPads.  Additionally, RHN failed to identify where Blanca Vargas, Vannak Kong, Maria

4   Virrueta, Andrea Garcia, Jessica Virrueta, and Babak Sarraf's ESI was located.

5   On August 25, 2020, four months after the deadline, Ms. Garvis-Wright identified

6   email addresses for nine (9) newly identified custodians.  [Doc. 92, ¶ 16].  The domain name

7   associated with the emails for the newly identified custodians was @nissanibros.com[2].

8   [Doc. 92, ¶ 18].  However, as identified in CNAN's production, Doxsee-Foster's production,

9   CNAN's Motion for Sanctions [Doc. 43], Reply to Opposition to Motion for Sanctions

10  [Doc. 46], and the August 18, 2020 telephonic conference, RHN's custodians

11  communicated from two domain names: @nissanibros.com **and** @hoomanautomotive.com.

12  RHN and its counsel failed to identify any email addresses associated with the

13  @hoomanautomotive.com domain name.

14  Additionally, on August 25, 2020, Ms. Garvis-Wright declared that only Mr.

15  Arnold's[3] and Hooman Nissani's cell phones contained relevant ESI.  [Doc. 92, ¶ 19].  This

16  is false.  Mr. Arnold's February 25, 2020 Declaration revealed that, on or before December

17  10, 2019 (8 months *before* Ms. Garvis-Wright's Declaration), Mr. Arnold located text

18  messages between: (1) Hooman Nissani and Carlos Bolivar, (2) Hooman Nissani and Jay

19  Sharpnak, (3) Hooman Nissani and **Vannak Kong**, (4) Hooman Nissani and **Rayan**

20  **Nissani**, and (5) Hooman Nissani and David Arnold.  [Doc. 44-1, ¶ 11].  Therefore, at least

21  both Vannak Kong and Rayan Nissani also have phones with relevant ESI.

22  **D.  RHN and Its Counsel Failed to Hire a Vendor to Search for and Collect ESI.**

23  RHN's counsel did not: (1) participate in the selection or retention of an ESI vendor;

24  (2) participate in educating the vendor about The Order or ESI Protocol; (3) instruct the

25  vendor as to which accounts/devices must be searched; (4) oversee the search and collection

26  ───────────────

[2] Ms. Garvis-Wright identified @piusfelix.com domain name for Mr. Arnold.

27  [3] None of Mr. Arnold's text messages were produced and Mr. Nissani produced only select

28  text messages with a single individual, omitting all others.

Case 2:19-cv-02960-GMS   Document 117   Filed 09/21/20   Page 6 of 16

1    of the ESI; or (5) oversee the review and production of the ESI.  Indeed, RHN's counsel did

2    not even know *who* the ESI vendor was until August 25, 2020 – months after the vendor

3    was ordered to be hired.  [Ex. A-75, Aug. 26, 2020 Email from W. Mullen].  Rather, RHN's

4    counsel let Mr. Nissani call the shots as to who should be hired, what should be searched,

5    and, as identified below, what should be produced.

6         To this day, it does not appear (1) a vendor searched for and collected the ESI after

7    The Order, (2) all appropriate accounts/devices were searched, (3) the collection was ever

8    reviewed by counsel or (4) anyone besides Hooman Nissani determined what should/should

9    not be produced.  As identified below, given the amount of missing information (emails and

10   texts) and RHN's absolute failure to produce ESI in accordance with the ESI Protocol, it is

11   highly unlikely that RHN retained an independent ESI vendor to search for and collect the

12   required information from all salient custodians after The Order.[4]

13   **E.   Counsel Failed to Review The Collected Information, Let Alone Determine What
     Should Be Produced (and What Was Obviously Missing).**

14

15        RHN's counsel failed to review the collected information and failed to make a

16   determination as to what was/was not relevant to the parties' claims and defenses. [Doc. 92,

17   ¶ 7]. Instead, counsel let Mr. Nissani make the determination about what would/would not

18   be produced. Specifically, on May 19, 2020 (the date the production was due), RHN's

19   counsel received a link to RHN's production at 9:03 PM from an undisclosed sender which

20   she simply forwarded to CNAN without reviewing, let alone making a determination as to

21   what should/should not be produced (and what was obviously missing). [*Id.* at ¶ 8].[5]

22
23   [4] CNAN served subpoenas upon the two ESI vendors identified by RHN's counsel. The
     records produced by one of the vendors shows that RHN did not hire it until long after the
24   document production was made (incorrectly), and then only to put the ESI into a form more
     in line with the parties' protocol.  The other vendor response is due on September 22, 2020.

25
26   [5] While Ms. Garvis-Wright proclaims that she did so "[b]ecause of the lateness of the hour,"
     she does not disclose these circumstances and does not explain how the lateness excused
27   her compliance with this Court's order.  Rather, Ms. Garvis-Wright misleadingly wrote
     "**Pursuant to the Court's April 9, 2020 order, please see the link below**."  [Ex. A-44,
28   May 19, 2020 Email from K. Garvis-Wright].

Motion for Sanctions - 6

1   Additionally, as discussed in CNAN's Motion for Sanctions [Doc. 43] and The

2   Order, Mr. Nissani withheld text messages because *Mr. Nissani* allegedly deemed them

3   irrelevant. [Doc. 50, 3:16-19]. Counsel did not review the withheld text messages and no

4   additional text messages were produced.

5   **F.  RHN and its Counsel Actively Worked to Deceive the Court and CNAN by Hiring**

6   **a Vendor *After the Fact*.**

7   The Court ordered RHN to have its "vendor produce the relevant information" in

8   accordance with the parties' ESI protocol.  The May 19, 2020 production failed to comply

9   with any aspect of the Parties' ESI Protocol. Had RHN's counsel reviewed the production

10   per The Order, they would have easily noted the deficiencies (and seen that ESI was

11   missing). On May 20, 2020, CNAN notified RHN of its deficient production (no load,

12   image, or OCR files for any of the data, the three PDFs are just a compilation of emails and

13   attachments, not separated, etc.). [Ex. A-45, May 20, 2020 Email from G. Shanmuganatha;

14   Ex. A-48, May 21, 2020 Email from G. Shanmuganatha]. This was not the first time CNAN

15   notified RHN of its failure to comply with the ESI Protocol.  [Ex. A-32, Feb. 3, 2020 Email

16   from G. Shanmuganatha to M. Kawabata; Ex. A-34, Feb. 6, 2020 Email from G.

17   Shanmuganatha to M. Kawabata].

18   A few hours after CNAN identified the deficiencies, Mr. Arnold contacted Charles

19   Balot of OnlineSecurity for the express purpose of retaining OnlineSecurity to "[r]eview

20   production specifications supplied by client for production to opposing counsel in load file

21   format." [**Ex. B** at Online_00004 and Online_00036]. This demonstrates that RHN retained

22   OnlineSecurity solely to provide an *appearance* that a vendor was involved in search,

23   collection and production. Counsel promoted this false appearance by proclaiming  "**we** are

24   working on getting the correctly formatted production **from the vendor**" and "**we** are told

25   that **the vendor** is endeavoring to get this completed by tomorrow." [Ex. A-46, May 20,

26   2020 Email from K. Garvis-Wright; Ex. A-47, May 21, 2020 Email from K. Garvis-Wright].

27   From  the  declarations  of  RHN's  prior  counsel  and  the  documents  produced  by

28

1   OnlineSecurity, it is clear RHN did not hire an independent vendor to perform a search and

2   collection as required by The Order.

3          On May 26, 2020, RHN produced a "re-formatted" ESI production. [Ex. A-49, May

4   26, 2020 E-Mail from K. Garvis-Wright]. The "re-formatted" production, spanning a total

5   of 1,185 pages, also did not comply with the Parties' ESI protocol. [Ex. A, ¶ 5]. For example,

6   the Parties' ESI protocol required RHN to provide nineteen (19) metadata fields but RHN

7   failed to produce any metadata load files for the first 707 pages. The Parties' ESI protocol

8   required RHN to indicate ESI family relationship-specifically parent email and child

9   attachments-but RHN failed to identify relationships over 139 parent emails and 13

10  attachments. Likewise, RHN completely failed to "remove duplicate emails across

11  custodians during the collection…as well as prior to the production" as required by the

12  protocol. [**Ex. C**, Chart Identifying Duplicate Documents].

13         Despite numerous requests, RHN's counsel refused to make themselves or their

14  vendor available for a telephonic conference with CNAN.  [Ex. A-48, May 21, 2020 Email

15  from G. Shanmuganatha; Ex. A-52, May 29, 2020 Email from G. Shanmuganatha; Ex. A-

16  53, June 5, 2020 Email from G. Shanmuganatha]. Instead, RHN's counsel continued to

17  promote the façade that counsel knew who RHN's vendor was by asking CNAN to:

18                  [I]dentify in an e-mail the specific, outstanding issues that
                    CNAN wants RHN to address, so that we can work with our
19                  client and the vendor to resolve them.

20  [Ex. A-54, Jun. 9, 2020 Email from W. Mullen]. In response, CNAN asked counsel to:

21                  [A]nswer one simple question as a sign of good faith:  please
                    identify the vendor(s) that was utilized to comply with
22                  paragraphs 4 & 6 of the Court's order (attached).  The name(s)
                    of the vendor(s) you utilized has been requested for several
23                  weeks now.  You should be able to provide the name(s) within
                    minutes.
24

25  [Ex. A-55, Jun. 9, 2020 Email from G. Shanmuganatha]. CNAN followed up on June 16

26  and 19, 2020. [Ex. A-56, Jun. 19, 2020 Email from T. Ezzell; Ex. A-57, Jun. 19, 2020 Email

27  from J. Brown].  RHN's counsel's continued to ignore their meet and confer obligations,

28  opting instead to misinterpret the Court's April 9 Order:

> [T]he Court's April 9, 2020 Order does not require that RHN
> identify their vendor to CNA or that the vendor participate in
> any discussions with CNA about RHN's productions.

[Ex. A-58, Jun. 23, 2020 Email from W. Mullen]. Accordingly, on June 23, 2020, CNAN emailed the Court for a telephonic conference. [Ex. A-59, Jun. 23, 2020 Email from G. Shanmuganatha]. A few minutes later, Ms. Garvis-Wright emailed Ms. Ezzell asking to talk about the mediation (scheduled for July 30, 2020). [Ex. A-60, Jun. 23, 2020 Email from K. Garvis-Wright]. On June 26, 2020, Ms. Garvis-Wright informed Mr. Godwin that Mr. Nissani wanted to pull out of the mediation because of the ESI Court conference. [**Ex. D**, Declaration of G. David Godwin, ¶ 2]. To avoid having the mediation canceled, CNAN deferred the ESI conference. [*Id*. at ¶ 3].

**G. RHN Failed to Produce All Relevant Information From All ESI Custodians.**

Following the Court's April 9, 2020 Order, RHN failed to produce:

- Emails between Rayan Nissani and Hooman Nissani;
- Emails between Hooman Nissani and Babak Sarraf (the third person who signed the Override Agreement at the heart of this case);
- Emails between Rayan Nissani and Babak Sarraf;
- Emails between Babak Sarraf and RHN employees and RHN agents (Doxsee Foster, GPW, CPA);
- ESI from the custodians identified in Ms. Garvis-Wright's August 25, 2020 Declaration;
- Though RHN contended that there was relevant ESI on "cell phones", RHN failed to produce:
  - Text messages between Rayan Nissani and Hooman Nissani;
  - Text messages between Hooman Nissani and Babak Sarraf;
  - Text messages between David Arnold and Hooman Nissani;
  - Text messages between David Arnold and RHN employees and RHN agents (Doxsee Foster, GPW, CPA);
  - Text messages between Rayan Nissani and RHN employees and RHN agents (Doxsee Foster, GPW, CPA);
  - Text messages between Hooman Nissani and RHN employees and RHN agents (Doxsee Foster, GPW, CPA).

Moreover, a non-exhaustive analysis of the documents produced by CNAN and Doxsee Foster demonstrates that RHN failed to produce other highly relevant communications. [**Ex.**

**E**, Difference in (1) the communications between CNAN and RHN that CNAN produced, (2) the communications between Doxsee Foster and RHN that Doxsee Foster produced, and (3) the communications between RHN and CNAN and RHN and Doxsee Foster that RHN produced.] As demonstrated by **Ex. E**, it appears that RHN failed to produce more than 100 emails (representing more than 300 pages of emails) and almost 850 pages of attachments that CNAN and Doxsee-Foster produced. Based on all of the information above, it is readily apparent that RHN did not comply with this Court's Order and failed to produce information to which CNAN does not otherwise have access.

**H. RHN and RHN's Counsel's Failure to Comply with the August 18, 2020 Order.**

On August 18, 2020, the Court ordered RHN to file a declaration that: (1) contains a complete account of all efforts made by RHN and RHN's counsel to (a) identify document custodians, (b) provide the document custodians' appropriate contact information, and (2) identify the location of all relevant ESI by specific email or other address. [Doc. 84]. The Court also ordered RHN to "provide to CNAN the identity of its data vendor, together with dates on which that vendor can be deposed." *Id.* As set forth in CNAN's Motion to Compel [Doc. 112], RHN's declarations were woefully deficient.

Additionally, on August 26, 2020, RHN's counsel identified two third-party vendors RHN purportedly retained for the ESI collection. [Ex. A-75, Aug. 26, 2020 Email from W. Mullen]. Amazingly, RHN's counsel appeared to have learned of these names for the first time on August 25, 2020. *Id.* In direct contravention of the Order, RHN's counsel failed to identify the dates on which each of the vendors could be deposed. *Id.*

**LEGAL ARGUMENT**

This Court has been extremely patient with RHN and its counsel. Since December 2019, the Court has expended substantial time and resources educating RHN and its counsel about their obligations, warned RHN and its counsel about the consequences of failing to comply with the Rules and MIDP, issued multiple orders to help RHN comply with the rules and MIDP, and issued sanctions in an effort to incentivize RHN and its counsel to take their

obligations to the Court and CNAN seriously.  Yet, neither RHN nor its counsel were deterred.  Instead, they violated more court orders and wasted more of the Court's and CNAN's time and resources. Given the breadth of RHN's willful, bad faith conduct, and the fact that the less severe sanctions of attorneys' fees did not act as a deterrent, CNAN requests that the Court:

> (1) Dismiss RHN's profit-sharing claim (Counts 1, 3, and 4);
>
> (2) Preclude RHN from disclosing evidence of alleged damages;
>
> (3) Preclude RHN from contesting, or introducing any evidence contesting, that Exhibit A to CNAN's First Amended Complaint is the operative Override Agreement; and
>
> (4) Order RHN and its attorneys to pay CNAN all of its fees and costs arising from and relating to RHN's and its counsel's failure to comply with the Rules, the MIDP, this Court's orders (including the fees and costs incurred by CNAN for being forced to raise discovery disputes, file motions, appear for hearings, and submit fee applications).

The Court has ample authority to sanction RHN and RHN's counsel pursuant to Rules 16(f)(1)(C), 16(f)(2), 37(b)(2), 41(b), and the Court's inherent powers.

## A. **RHN's Claim Arising from an Alleged Profit-Sharing Agreement Should be Dismissed, and RHN Should be Precluded from Disclosing any Related Damages.**

On March 25, 2019, RHN asserted claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Unjust Enrichment arising from CNAN's alleged breach of a "profit-sharing agreement," claiming CNAN failed to deposit proceeds of VSC sales into an account "that bore a preferential ROI at a financial institution designated by RHN's CEO."  [Doc. 1-3, ¶ 31; Doc. 17, 8:3-9:17; Doc. 39, 3:10-20]. As shown in CNAN's Motion to Compel [Doc. 112], RHN has not identified: (1) the alleged profit-sharing agreement that gives rise to RHN's claims, (2) any document that obligates CNAN to deposit the proceeds from the VSC sales into specific banks, (3) any damages arising from CNAN's alleged breach of this "profit-sharing agreement", (4) the legal

theories behind RHN's claim in light of a written reinsurance agreement with a non-party pertaining to the same VSC sale proceeds, or (5) any basis for Mr. Nissani's claim that damages started accruing from January 1, 2018 (*before* RHN sold a single VSC).

The General Order provides that Rule 37(b)(2) shall apply to mandatory discovery responses required by this order.  [General Order, ¶ A(11)].  Rule 37(b) empowers the courts to impose sanctions for failures to obey discovery orders, which can be "either for remedial and compensatory purposes or punitive and deterrent purposes."  *Falstaff Brewing Corp. v. Miller Brewing Co*., 702 F.2d 770, 784 (9th Cir. 1983).  Rule 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery, the Court may issue further just orders including:

> (i) Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> ***
> (v) Dismissing the action or proceeding in whole or in part . . .

Fed.R.Civ.P. 37(b)(2).

Moreover, Rule 41(b) allows a court to dismiss an action for failure to comply with the Rules or failure to comply with court orders.  *See* Fed.R.Civ.P. 41(b); *Hells Canyon Pres. Council v. U.S. Forest Serv*., 403 F.3d 683, 689 (9th Cir.2005) (court may dismiss under Rule 41(b) for failure to prosecute or comply with rules of civil procedure or the court's orders); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (1992) (a district court may dismiss an action for failure to comply with any order of the court). Dismissal is warranted to foster the public's interest in expeditious resolution of cases, to enable the Court to better manage its docket by sanctioning vexatious and bad faith conduct that clogs the Court's docket, and because the less severe sanctions of attorney's fees has not deterred RHN's bad faith conduct.

There is no question that RHN, the party who initiated this lawsuit 18 months ago, had an obligation to identify the facts/documents that demonstrate its standing to bring a claim arising from the alleged "profit-sharing agreement", disclose the "profit-sharing agreement" that gives rise to RHN's claims, and disclose its damages with its initial MIDP response on November 4, 2019.  RHN's failures are prejudicial to CNAN and unjustifiable and CNAN requests that the Court dismiss RHN's profit-sharing claim and preclude RHN from seeking damages.

**B. RHN Should be Precluded from Contesting that Exhibit A to CNAN's First Amended Complaint is the Operative Override Agreement.**

The Court has the inherent power to assess sanctions when a party "engaged in bad faith or willful disobedience of a court's order." *Chambers v. NASCO, Inc*., 501 U.S. 32, 46–47, 111 S.Ct. 2123 (1991).  Moreover, the Court is empowered to levy sanctions for a full range of litigation abuses that occur both in and out of the court's presence.  *Id.* at 501 U.S. 44-46 ("This power reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.")

RHN alleges that "prior to the parties' execution of the Agreement, they agreed to several modifications" which were memorialized by Mr. Nissani's handwritten alterations to the Override Agreement on December 29, 2017 "as set forth in Exhibit 1 to the Complaint." [**Ex. F**, Nov. 25, 2019 Supplemental MIDP, 3:6-13].  RHN contends it "sent a copy of Exhibit 1 (Override Agreement with alterations) to CNA" before "CNA National made the $5 million advance payment to RHN" on January 2, 2018.  [Doc. 1-3, ¶¶ 16-20; Doc. 29, 2:14-17 ("In order to memorialize this portion of the parties' agreement, RHN and City National entered into a written Dealership Override Agreement with Advance Payment ("Override Agreement"), which Hooman Nissani (as RHN's agent) modified with hand edits prior to sending to City National and receiving the advance payment.")

1       However, RHN has failed to produce any documents demonstrating that Mr. Nissani

2   communicated with CNAN or anyone else about the alterations until nine months after the

3   parties began performing under the Override Agreement.  In light of Mr. Nissani's staunch

4   refusal to disclose any supporting evidence, including his and his employees' and agents'

5   text messages and email communications, CNAN asks that RHN be precluded from

6   contesting that Exhibit A to CNAN's First Amended complaint is the operative Override

7   Agreement.  As discussed above, these sanctions are warranted pursuant to Rule 37, as well

8   as the Court's inherent power to assess sanctions for litigation abuses.

9  **C.**  **RHN and its Counsel Should be Jointly Ordered to Pay CNAN's Attorneys' Fees**

10       Rule 16(f)(1)(C) permits the Court to sanction a party or its attorney who "fails to

11  obey a scheduling or other pretrial order."  Rule 16(f)(2) provides that the Court "must order

12  the party, its attorney, or both to pay the reasonable expenses – including attorney's fees –

13  incurred because of any noncompliance with this rule."  Additionally, Rule 37(b)(2)(C)

14  provides that "the court must order the disobedient party, the attorney advising that party,

15  or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

16  unless the failure was substantially justified or other circumstances make an award of

17  expenses unjust."

18       Here, the Court should order RHN *and* its counsel to pay CNAN all of its attorneys'

19  fees and costs arising from or relating to RHN and its counsel's failure to comply with the

20  Rules, the MIDP, and this Court's Orders (including the fees and costs incurred by CNAN

21  for being forced to raise discovery disputes, file motions, appear for hearings, and submit

22  fee applications), and pay any fee award arising from the Application for Fees and Costs

23  pending before the Court [Doc. 58, 60]

24                           **CONCLUSION**

25       In light of RHN's and its counsel's bad faith and willful disregard of the Rules, this

26  Court's Orders, and their duty of candor to the Court and undersigned counsel, CNAN

27  requests that the Court:

28

1    (1) Dismiss RHN's profit-sharing claim (Counts 1, 3, and 4);

2    (2) Preclude RHN from seeking damages;

3    (3) Preclude RHN from contesting that Exhibit A to CNAN's First Amended

4    Complaint is the operative Override Agreement; and

5    (4) Order RHN and its counsel to pay CNAN all of its attorneys' fees and

6    costs arising from or relating to RHN and its counsel's failures and

7    violations discussed herein, as well as pay any fee award arising from the

8    Application for Fees and Costs pending before the Court [Doc. 58, 60].

9    RESPECTFULLY SUBMITTED this 21st day of September, 2020.

TIFFANY & BOSCO, P.A.

By:    */s/Tina M. Ezzell*
       Tina M. Ezzell
       Gaya Shanmuganatha
       Jessica I. Brown
       2525 East Camelback Road, Seventh Floor
       Phoenix, Arizona 85016
       *Attorneys for Defendant/Counter-Claimant CNA*
       *National Warranty Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2020, I electronically transmitted the foregoing *Motion for Sanctions* with the Clerk's Office using the CM/ECF system for filing and that a copy of same was also electronically served via CM/ECF to the following ECF participants:

| | |
|---|---|
| Corey B. Larson<br>Waterfall, Economidis, Caldwell,<br>Hanshaw<br>& Villamana, P.C.<br>5210 E. Williams Circle, Suite 800<br>Tucson, AZ  85711<br>clarson@waterfallattorneys.com<br>*Attorneys for Plaintiffs/Counter-*<br>*Defendants/Defendants* | Duncan McCreary<br>McCreary, PC<br>11601 Wilshire Blvd., 5th Floor<br>Los Angeles, CA  90025-1995<br>djm@mccrearypc.com<br>*Attorneys for Plaintiffs RHN, Inc., et al,*<br>*Defendants 737 N. La Brea, LLC, 3170*<br>*Cherry Avenue Property, LLC and*<br>*Redondo Prop., LLC (Pro Hac Vice)* |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

G. David Godwin
Squire Patton Boggs (US) LLP
275 Battery Street
San Francisco, CA  94804
david.godwin@squirepb.com
*Attorneys for Defendant/Counter-
Claimant CNAN (Pro Hac Vice)*

By: /s/ *Rebecca C. Lewis*
     Rebecca C. Lewis

Kerry Garvis Wright
William C. Mullen
Glaser Weil Fink Howard Avchen &
Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
kgarviswright@glaserweil.com
wmullen@glaserweil.com
*Former Attorneys for Plaintiffs RHN, Inc.,
et al, Defendants 737 N. La Brea, LLC,
3170 Cherry Avenue Property, LLC and
Redondo Prop., LLC*