# EXHIBIT B

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Wednesday, May 20, 2020 3:11 PM |
| **To:** | balot@onlinesecurity.com |
| **Subject:** | ESI Request |

Mr. Balot

Below is the ESI Protocol.

We have three PST files containing the searched data
which have a total of about 700-800 emails.

What I would need to know are as follows:
  1.  What would your fee be?  (And retainer amount)
  2.  When could you get started?
  3.  How long would it take?

Our counsel is Duncan McCreary

The best way to reach me is on my cell
(310) 293-4384

Thanks

Dave Arnold

Online_00004

**Charlie Balot**

| | |
|---|---|
| **From:** | Charlie Balot <balot@onlinesecurity.com> |
| **Sent:** | Wednesday, May 20, 2020 3:13 PM |
| **To:** | 'david@piusfelix.com' |
| **Subject:** | RE: ESI Request |

I need the actual discovery demands served on you by opposing counsel.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California 90034
Phone: 310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# **OnlineSecurity** ™

### **Comprehensive Litigation Support**

### **Los Angeles   New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 3:11 PM
**To:** balot@onlinesecurity.com
**Subject:** ESI Request

Mr. Balot

Below is the ESI Protocol.

We have three PST files containing the searched data
which have a total of about 700-800 emails.

What I would need to know are as follows:
1.  What would your fee be?  (And retainer amount)
2.  When could you get started?
3.  How long would it take?

1

Our counsel is Duncan McCreary

The best way to reach me is on my cell
(310) 293-4384

Thanks

Dave Arnold

2

Online_00006

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Wednesday, May 20, 2020 3:14 PM |
| **To:** | balot@onlinesecurity.com |
| **Subject:** | RE: ESI Request |

I realized I did not include the protocol...

    a. All ESI production will be imaged, and all images will be accompanied by native and OCR text recognition ("ESI Production").

    b. All irrelevant system files shall be removed from the ESI Production (the parties agree to DeNIST the ESI Production).

    c. Root directories of Media will contain ESI Production in the form of images (single-paged TIFF Group IV for each page for each document) and native files with Begdoc reference name. Files will be saved to customary Image and Native folders. A third directory, Data, will contain load files. Load files provided will include:

        1)Production Keys (BegDoc, EndDoc, BegAtt, EndAtt or their equivalents);

        2)Attachment reference files;

        3)Metadata load files; (Metadata categories contained in dat files; and

        4)Opticon files.

    d. File Format:

        1)Image files will be prepared for commonly exchanged email and file formats (pst, msg, eml), attachments, tif, pdf, and word processing files.

        2)Spreadsheet files (xls, xlsx, xlsm) will be provided in native format only. Spreadsheets will be treated as exceptions with a "See Native File" placeholder.

        3)Audio, video, and unknown file types will be produced in native format, and with a Bates stamped placeholder.

    e. Specifications for formats:

        1)Image Load File: OPT

        2)Metadata Load File: DAT

        3)Metadata Fields: Native file linking by way of Native Relative Path field in load file. Load file fields should accompany images, as well as include reference native files. Load files to contain at minimum the following fields:

- BegDoc;
- EndDoc;
- BegAtt;
- EndAtt
- Native Relative Path;
- Native File Name;
- Email subject;
- Communication date;
- Item Date;
- File Type Description;
- Extension;
- Page Count;
- Native size;
- Email Sender;
- Email To;
- Email CC;
- Email Bcc;

1

- MD5 Hash; and
- Attachment IDs.
    4) Sub-folders should contain no greater than 1,000 files.
f.  Indication of ESI family relationship (Parent email and child attachments):
    1) Child documents indicated in load file by attachment IDs. ESI Family relationship should also be indicated by Begatt field.
    2) Duplicate emails: The parties agree to remove duplicate emails across custodians during collection (for example remove duplicate emails from the Office 365 environment at the time of collection) as well as prior to production.
g.  Redactions: Extracted text and native files may be withheld as needed to preserve privilege.
h.  Exception handling: Image placeholders will be produced for Excel spreadsheets. Where unprocessed or non-imaged file formats (ie SRF, db, autocad, encrypted, or uncommon files) are encountered, native files will be produced, with an image placeholder. All Images to be branded with a Bates stamp. Bates location: lower right corner
i.  Media: Files will be exchanged via internet Sharefile links. Media folder structure:
    1) IMAGES (single-paged tiffs, jpeg files for color)
    2) NATIVE (native files)
    3) DATA (load files)


**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 4:11 PM
**To:** 'balot@onlinesecurity.com' <balot@onlinesecurity.com>
**Subject:** ESI Request

Mr. Balot

Below is the ESI Protocol.

We have three PST files containing the searched data
which have a total of about 700-800 emails.

What I would need to know are as follows:
1.  What would your fee be?  (And retainer amount)
2.  When could you get started?
3.  How long would it take?

Our counsel is Duncan McCreary

The best way to reach me is on my cell
(310) 293-4384

Thanks

Dave Arnold

Online_00008

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Wednesday, May 20, 2020 4:31 PM |
| **To:** | 'Charlie Balot' |
| **Subject:** | RE: ESI Request |
| **Attachments:** | CNA's Proposed ESI Plan.pdf |

Mr. Balot

Please see attached

Dave Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Wednesday, May 20, 2020 4:13 PM
**To:** david@piusfelix.com
**Subject:** RE: ESI Request

I need the actual discovery demands served on you by opposing counsel.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

### Comprehensive Litigation Support

### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 3:11 PM
**To:** balot@onlinesecurity.com
**Subject:** ESI Request

Online_00009

Mr. Balot

Below is the ESI Protocol.

We have three PST files containing the searched data
which have a total of about 700-800 emails.

What I would need to know are as follows:
1. What would your fee be?  (And retainer amount)
2. When could you get started?
3. How long would it take?

Our counsel is Duncan McCreary

The best way to reach me is on my cell
(310) 293-4384

Thanks

Dave Arnold

Online_00010

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)


Pursuant to General Order 17-08(C)(2), CNA National Warranty Corporation ("CNA") proposes the following ESI parameters. These are for the purpose of discussion and are not intended to be a final or complete list, and our clients reserve all rights.

1. Date Range – October 1, 2017 – March 28, 2019

2. Custodians
   a. CNAN will investigate and produce relevant, non-privileged ESI from the following custodians:
      1) Alan Miller
      2) Carol Huber
      3) Erika S. Ahern Curran
      4) Jacob Ochoa
      5) Jay Sharpnack
      6) Joey Becker
      7) John Loughlin
      8) Marc Thorson
      9) Scott Magnano
      10) Sharon Berry
      11) Todd Sands
      12) Keylee O'Shaughnessy
      13) William "Billy" Mauterer
      14) John Flanagan
      15) Jackie Carlson
      16) Leslie Guempel
      17) Patrick Halladay
      18) Johann D'Costa
      19) Sarah Wilson
   b. RHN, Inc., RHH Automotive, Inc., RHC Automotive, Inc., NBA Automotive, Inc., R & H Automotive Group, Inc. (collectively "Dealers") and Hooman and Melody Nissani ("Nissani") will investigate and produce relevant, non-privileged ESI from the following custodians:
      1) Babak Sarraf
      2) Hooman Nissani
      3) Melody Nissani
      4) Rayan Nissani
      5) David Arnold
      6) Employees of RHN, Inc.
      7) Employees of RHH Automotive, Inc.
      8) Employees of RHC Automotive, Inc.
      9) Employees of NBA Automotive, Inc.

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

     10) Employees of R & H Automotive Group, Inc.
     11) Employees of Hailey Reinsurance

3. CNA, Dealers & Nissani (collectively "Parties") understand that the custodians identified pursuant to this ESI proposal had salient communications with several third parties. Therefore, the Parties will search for and produce relevant communications the Parties had with the following third parties:
   a. Doxsee Foster & Associates employees, including:
      1) Carlos Bolivar
      2) Doxsee Foster
      3) John DeJohn
      4) Randy Foster
   b. GPW & Associates, including:
      1) Greg Petrowski
      2) Janet Weer
   c. Bank of Oklahoma employees, including:
      1) Cody Bezanson
      2) Jeni Davis
      3) Heidi Hebert
   d. Consumers who purchased or were identified as purchasing CNA products from Dealers and/or Nissani
      1) Program/Software report

4. Search terms
   a. CNA will search for the following terms:
      1) Hooman
      2) Nissani
      3) Babak
      4) Sarraf
      5) Rayan
      6) Melody
      7) RHN
      8) RHH
      9) RHC
     10) NBA
     11) R&H
   b. Dealers and Nissani will search for the following terms:
      1) Reinsurance
      2) Alan Miller
      3) Carol Huber
      4) Erika S. Ahern Curran
      5) Jacob Ochoa

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

    6)  Jay Sharpnack
    7)  Joey Becker
    8)  John Loughlin
    9)  Marc Thorson
    10)  Scott Magnano
    11)  Sharon Berry
    12)  Todd Sands
    13)  Keylee O'Shaughnessy
    14)  William "Billy" Mauterer
    15)  John Flanagan
    16)  Jackie Carlson
    17)  Leslie Guempel
    18)  Patrick Halladay
    19)  Johann D'Costa
    20)  Sarah Wilson
    21)  CNA
    22)  National Warranty Corporation
    23)  Seychelles

c.  The Parties will search for the following terms
    1)  $5,000,000

        w/10:

        Hooman

        Nissani

        RHN

        Carlos

        Bolivar

        Doxsee

        Foster

        John

        DeJohn

        Randy

    2)  5 million

        w/10:

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

Hooman

Nissani

RHN

Carlos

Bolivar

Doxsee

Foster

John

DeJohn

Randy

3)   Five mil

w/10:

Hooman

Nissani

RHN

Carlos

Bolivar

Doxsee

Foster

John

DeJohn

Randy

4)   GPW

w/10:

Hooman

Nissani

$5,000,000

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

       5 mil!

       Carlos

       Bolivar

       Doxsee

       Foster

       John

       DeJohn

       Randy

5)    Hailey Reinsurance Company
6)    Greg Petrowski

       w/10:

       Hooman

       Nissani

       $5,000,000

       5 mil!

       Carlos

       Bolivar

       Doxsee

       Foster

       John

       DeJohn

       Randy

7)    Doxsee
8)    BOK Financial/ Bokf
9)    Override Agreement

       w/10:

       Hooman

       Nissani

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

$5,000,000

5 mil!

Carlos

Bolivar

Doxsee

Foster

John

DeJohn

Randy

10)  Advance

w/10:

Hooman

Nissani

$5,000,000

5 mil!

Carlos

Bolivar

Doxsee

Foster

John

DeJohn

Randy

11)  Shortfall

w/10:

Hooman

Nissani

$5,000,000

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

5 mil!

Carlos

Bolivar

Doxsee

Foster

John

DeJohn

Randy

12) Carlos Bolivar
13) Doxsee Foster
14) John DeJohn
15) Randy Foster
16) Cody Bezanson
17) Jeni Davis
18) Dealership advance

w/10:

Hooman

Nissani

$5,000,000

5 mil!

Carlos

Bolivar

Doxsee

Foster

John

DeJohn

Randy

19) Dealership short advance

w/10:

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

Hooman

Nissani

$5,000,000

5 mil!

Carlos

Bolivar

Doxsee

Foster

John

DeJohn

Randy

5. ESI shall be produced in the following manner:
   a. All ESI production will be imaged, and all images will be accompanied by native and OCR text recognition ("ESI Production").
   b. All irrelevant system files shall be removed from the ESI Production (the parties agree to DeNIST the ESI Production).
   c. Root directories of Media will contain ESI Production in the form of images (single-paged TIFF Group IV for each page for each document) and native files with Begdoc reference name. Files will be saved to customary Image and Native folders. A third directory, Data, will contain load files. Load files provided will include:
      1) Production Keys (BegDoc, EndDoc, BegAtt, EndAtt or their equivalents);
      2) Attachment reference files;
      3) Metadata load files; (Metadata categories contained in dat files; and
      4) Opticon files.
   d. File Format:
      1) Image files will be prepared for commonly exchanged email and file formats (pst, msg, eml), attachments, tif, pdf, and word processing files.
      2) Spreadsheet files (xls, xlsx, xlsm) will be provided in native format only. Spreadsheets will be treated as exceptions with a "See Native File" placeholder.
      3) Audio, video, and unknown file types will be produced in native format, and with a Bates stamped placeholder.
   e. Specifications for formats:
      1) Image Load File: OPT
      2) Metadata Load File: DAT

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

    3)    Metadata Fields: Native file linking by way of Native Relative Path field in load file.  Load file fields should accompany images, as well as include reference native files.  Load files to contain at minimum the following fields:

- BegDoc;
- EndDoc;
- BegAtt;
- EndAtt
- Native Relative Path;
- Native File Name;
- Email subject;
- Communication date;
- Item Date;
- File Type Description;
- Extension;
- Page Count;
- Native size;
- Email Sender;
- Email To;
- Email CC;
- Email Bcc;
- MD5 Hash; and
- Attachment IDs.

    4)    Sub-folders should contain no greater than 1,000 files.

f.  Indication of ESI family relationship (Parent email and child attachments):

    1)    Child documents indicated in load file by attachment IDs. ESI Family relationship should also be indicated by Begatt field.

    2)    Duplicate emails: The parties agree to remove duplicate emails across custodians during collection (for example remove duplicate emails from the Office 360 environment at the time of collection) as well as prior to production.

g.  Redactions: Extracted text and native files may be withheld as needed to preserve privilege.

h.  Exception handling: Image placeholders will be produced for Excel spreadsheets. Where unprocessed or non-imaged file formats (ie SRF, db, autocad, encrypted, or uncommon files) are encountered, native files will be produced, with an image placeholder. All Images to be branded with a Bates stamp. Bates location: lower right corner

i.  Media: Files will be exchanged via internet Sharefile links. Media folder structure:

    1)    IMAGES (single-paged tiffs, jpeg files for color)

    2)    NATIVE (native files)

CNA NATIONAL WARRANTY CORPORATION'S PROPOSAL PURSUANT TO
GENERAL ORDER 17-08(C)(2)
(December 4, 2019)

3)   DATA (load files)

Online_00020

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Thursday, May 21, 2020 9:15 AM |
| **To:** | 'Charlie Balot' |
| **Subject:** | RE: ESI Request |

Mr. Balot

Will you be available for a call with myself and my employer
at 10?

Regards

Dave Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Wednesday, May 20, 2020 6:04 PM
**To:** david@piusfelix.com
**Subject:** RE: ESI Request

Hi David,

Thank you for getting me this information.  I will respond to you by 10 AM tomorrow morning with a proposal.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# OnlineSecurity ™

### Comprehensive Litigation Support

### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

1

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 4:31 PM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: ESI Request

Mr. Balot

Please see attached

Dave Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Wednesday, May 20, 2020 4:13 PM
**To:** david@piusfelix.com
**Subject:** RE: ESI Request

I need the actual discovery demands served on you by opposing counsel.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# **OnlineSecurity** ™

### **Comprehensive Litigation Support**

### **Los Angeles    New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.


**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 3:11 PM
**To:** balot@onlinesecurity.com
**Subject:** ESI Request

Mr. Balot

Below is the ESI Protocol.

Online_00022

We have three PST files containing the searched data
which have a total of about 700-800 emails.

What I would need to know are as follows:
1. What would your fee be?  (And retainer amount)
2. When could you get started?
3. How long would it take?

Our counsel is Duncan McCreary

The best way to reach me is on my cell
(310) 293-4384

Thanks

Dave Arnold

Online_00023

**Charlie Balot**

| | |
|---|---|
| **From:** | Charlie Balot <balot@onlinesecurity.com> |
| **Sent:** | Thursday, May 21, 2020 9:17 AM |
| **To:** | 'david@piusfelix.com' |
| **Subject:** | RE: ESI Request |

Sure, call my office # below.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# OnlineSecurity ™

### Comprehensive Litigation Support

### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.


**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Thursday, May 21, 2020 9:15 AM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: ESI Request

Mr. Balot

Will you be available for a call with myself and my employer at 10?

Regards

Dave Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Wednesday, May 20, 2020 6:04 PM

1

**To:** david@piusfelix.com
**Subject:** RE: ESI Request

Hi David,

Thank you for getting me this information. I will respond to you by 10 AM tomorrow morning with a proposal.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# OnlineSecurity ™

### Comprehensive Litigation Support

### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission. Thank you.


**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 4:31 PM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: ESI Request

Mr. Balot

Please see attached

Dave Arnold


**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Wednesday, May 20, 2020 4:13 PM
**To:** david@piusfelix.com
**Subject:** RE: ESI Request

I need the actual discovery demands served on you by opposing counsel.

Online_00025

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# **OnlineSecurity** ™

### Comprehensive Litigation Support

### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended
recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly
prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and
then delete all copies of the transmission.  Thank you.

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 3:11 PM
**To:** balot@onlinesecurity.com
**Subject:** ESI Request

Mr. Balot

Below is the ESI Protocol.

We have three PST files containing the searched data
which have a total of about 700-800 emails.

What I would need to know are as follows:
1. What would your fee be?  (And retainer amount)
2. When could you get started?
3. How long would it take?

Our counsel is Duncan McCreary

The best way to reach me is on my cell
(310) 293-4384

Thanks

Dave Arnold

Online_00026

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Thursday, May 21, 2020 11:08 AM |
| **To:** | 'Charlie Balot' |
| **Subject:** | RE: ESI Request |

Hi Charlie

The entity to which you will address the proposal will
be
RHN, Inc.
8549 Wilshire Boulevard, Suite 1270
Beverly Hills, CA 90211

Signer will be Hooman Nissani

We will send someone over with a check as
soon as we get your proposal.

Thanks!

Dave

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 11:17 AM
**To:** david@piusfelix.com
**Subject:** RE: ESI Request

David,

I have a hard stop at 11 AM for our intended call.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# OnlineSecurity ™

**Comprehensive Litigation Support**

Online_00027

**Los Angeles   New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission. Thank you.

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 9:17 AM
**To:** 'david@piusfelix.com' <david@piusfelix.com>
**Subject:** RE: ESI Request

Sure, call my office # below.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# **OnlineSecurity** ™

### Comprehensive Litigation Support

**Los Angeles   New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission. Thank you.

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Thursday, May 21, 2020 9:15 AM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: ESI Request

Mr. Balot

Will you be available for a call with myself and my employer
at 10?

Regards

Online_00028

Dave Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Wednesday, May 20, 2020 6:04 PM
**To:** david@piusfelix.com
**Subject:** RE: ESI Request

Hi David,

Thank you for getting me this information. I will respond to you by 10 AM tomorrow morning with a proposal.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# <u>OnlineSecurity</u> ™

**Comprehensive Litigation Support**

**Los Angeles   New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission. Thank you.

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 4:31 PM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: ESI Request

Mr. Balot

Please see attached

Dave Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Wednesday, May 20, 2020 4:13 PM

Online_00029

**To:** david@piusfelix.com
**Subject:** RE: ESI Request

I need the actual discovery demands served on you by opposing counsel.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# <u>OnlineSecurity</u> ™

### Comprehensive Litigation Support

#### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.


**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Wednesday, May 20, 2020 3:11 PM
**To:** balot@onlinesecurity.com
**Subject:** ESI Request

Mr. Balot

Below is the ESI Protocol.

We have three PST files containing the searched data which have a total of about 700-800 emails.

What I would need to know are as follows:
    1.  What would your fee be?  (And retainer amount)
    2.  When could you get started?
    3.  How long would it take?

Our counsel is Duncan McCreary

The best way to reach me is on my cell
(310) 293-4384

Online_00030

Thanks

Dave Arnold

Online_00031

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Thursday, May 21, 2020 1:28 PM |
| **To:** | 'Charlie Balot' |
| **Subject:** | RE: OnlineSecurity Estimate |

Mr. Balot

This is acceptable.  Mr. Nissani would like to know
if it is possible, for an additional fee of course, to have
this produced by tomorrow?

Regards

David Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 1:51 PM
**To:** david@piusfelix.com
**Subject:** OnlineSecurity Estimate

Hi David,

Please find attached our estimate/work plan for your matter.  Please have the agreement signed and returned to
me.  Our retainer deposit check of $1,925 can be messengered to the address in my signature block below.  I will be in
my office until 3:15 today so if the messenger comes after that time tell them to place the envelope under our door.  Up
until 3:15 please tell them to knock on our office door.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

**Comprehensive Litigation Support**

**Los Angeles   New York**

Online_00032

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

Online_00033

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Thursday, May 21, 2020 1:40 PM |
| **To:** | 'Charlie Balot' |
| **Subject:** | RE: OnlineSecurity Estimate |
| **Attachments:** | Xerox Scan_05212020142907.pdf |

Mr. Balot

Please find the approved estimate attached.

Regards

David Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 1:51 PM
**To:** david@piusfelix.com
**Subject:** OnlineSecurity Estimate

Hi David,

Please find attached our estimate/work plan for your matter.  Please have the agreement signed and returned to me.  Our retainer deposit check of $1,925 can be messengered to the address in my signature block below.  I will be in my office until 3:15 today so if the messenger comes after that time tell them to place the envelope under our door.  Up until 3:15 please tell them to knock on our office door.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# **OnlineSecurity** ™

**Comprehensive Litigation Support**

**Los Angeles   New York**

1

Online_00034

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

Online_00035

ONLINESECURITY
3000 S. Robertson Blvd., Suite 288
Los Angeles, CA  90034
310-815-8855

# STATEMENT OF WORK

| DATE | ESTIMATE # |
|---|---|
| 5/21/2020 | 9316 |

| NAME / ADDRESS |
|---|
| RHN, Inc.<br>8549 Wilshire Blvd., Suite 1270<br>Beverly Hills, CA  90211 |

| | PROJECT |
|---|---|
| | |

| ITEM | DESCRIPTION | QTY | RATE | TOTAL |
|---|---|---|---|---|
| CBF | Email Load File Production Project<br><br>Download email data collected by client in PST format.  Upload client supplied PST file email data to the OLS online review repository.  Review production specifications supplied by client for production to opposing counsel in load file format. Tag all client supplied email PST file data for production based on production specifications provided by client.  Upload to Dropbox completed load file.  Project management (email & teleconference communication). Estimated 7 hrs. of professional time.<br><br>IT IS UNDERSTOOD THAT ONLINESECURITY WILL BE CREATING & PRODUCING THE LOAD FILE WHICH WILL INCLUDE ALL OF THE INITIAL PST FILE DATA PROVIDED TO ONLINESECURITY BY THE CLIENT.<br><br>AGREED TO & ACCEPTED BY: | 7 | 275.00 | 1,925.00 |

| | TOTAL | $1,925.00 |
|---|---|---|

Online_00036

## Charlie Balot

**From:**      Charlie Balot <balot@onlinesecurity.com>
**Sent:**       Thursday, May 21, 2020 2:02 PM
**To:**          'david@piusfelix.com'
**Subject:**   RE: OnlineSecurity Estimate

It's not a matter of money but just the process.  We have the data already uploaded to our repository and are pushing to get it done by tomorrow.  Will let you know our progress tomorrow morning.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:      310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

### Comprehensive Litigation Support

### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Thursday, May 21, 2020 1:28 PM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: OnlineSecurity Estimate

Mr. Balot

This is acceptable.  Mr. Nissani would like to know
if it is possible, for an additional fee of course, to have
this produced by tomorrow?

Regards

David Arnold

1

Online_00037

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 1:51 PM
**To:** david@piusfelix.com
**Subject:** OnlineSecurity Estimate

Hi David,

Please find attached our estimate/work plan for your matter. Please have the agreement signed and returned to me. Our retainer deposit check of $1,925 can be messengered to the address in my signature block below. I will be in my office until 3:15 today so if the messenger comes after that time tell them to place the envelope under our door. Up until 3:15 please tell them to knock on our office door.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:      310.815.8808
Cell:      310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

**Comprehensive Litigation Support**

**Los Angeles    New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

Online_00038

**Charlie Balot**

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Friday, May 22, 2020 9:34 AM |
| **To:** | 'Charlie Balot' |
| **Cc:** | richard@onlinesecurity.com |
| **Subject:** | RE: OnlineSecurity Estimate |

Good Morning Gentlemen

I was wondering if you have a status update?

Regards

David Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 3:02 PM
**To:** david@piusfelix.com
**Subject:** RE: OnlineSecurity Estimate

It's not a matter of money but just the process. We have the data already uploaded to our repository and are pushing to get it done by tomorrow. Will let you know our progress tomorrow morning.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California 90034
Phone: 310.815.8855 Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

**Comprehensive Litigation Support**

**Los Angeles   New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission. Thank you.

1

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Thursday, May 21, 2020 1:28 PM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: OnlineSecurity Estimate

Mr. Balot

This is acceptable.  Mr. Nissani would like to know
if it is possible, for an additional fee of course, to have
this produced by tomorrow?

Regards

David Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 1:51 PM
**To:** david@piusfelix.com
**Subject:** OnlineSecurity Estimate

Hi David,

Please find attached our estimate/work plan for your matter.  Please have the agreement signed and returned to
me.  Our retainer deposit check of $1,925 can be messengered to the address in my signature block below.  I will be in
my office until 3:15 today so if the messenger comes after that time tell them to place the envelope under our door.  Up
until 3:15 please tell them to knock on our office door.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# **OnlineSecurity** ™

**Comprehensive Litigation Support**

**Los Angeles    New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended
recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly
prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and
then delete all copies of the transmission.  Thank you.

Online_00040

## Charlie Balot

| | |
|---|---|
| **From:** | david@piusfelix.com |
| **Sent:** | Thursday, May 28, 2020 9:53 AM |
| **To:** | 'Charlie Balot' |
| **Cc:** | richard@onlinesecurity.com |
| **Subject:** | RE: OnlineSecurity Estimate |
| **Attachments:** | Hooman Product Cost WS (EM 2018 01 03).xlsx; Hooman Current Remits owed2 (EM 2018 11 28).xlsx; Hooman Product Cost WS (EM 2017 12 08).xlsx; Hooman Product Cost WS (EM 2018 01 02).xlsx |

Gentlemen

We have received an email form our attorney indicating that there
were a number of excel spreadsheets which were attached to the information
we provided you which needed to be included in the ESI per the protocol.

I looked in the PST and indeed found four spreadsheets as email attachments.
I have attached them here.  (I added dates as there are some duplicates)

Please advise

Dave Arnold

See below:


Hello,

There are 4 Excel files that are present in the data set that were not provided in Native Format per the ESI
protocol.  Please provide the 4 Excel files in Native Format as soon as possible.

Thank you.

Sincerely,



**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Friday, May 22, 2020 3:58 PM
**To:** david@piusfelix.com
**Subject:** RE: OnlineSecurity Estimate

David,

Richard informed me earlier that you assured him our check would be dropped off.  Close to 3 hours later we still
haven't seen your messenger.  We put aside other work both yesterday and today so we could execute on providing
what both you and Hooman so desperately needed.  I am leaving my office now and trust that when I come in tomorrow
the check will be under my office door.

Charlie Balot

Online_00041

CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:      310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

**Comprehensive Litigation Support**

**Los Angeles   New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended
recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly
prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and
then delete all copies of the transmission.  Thank you.

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Friday, May 22, 2020 9:45 AM
**To:** 'david@piusfelix.com' <david@piusfelix.com>
**Subject:** RE: OnlineSecurity Estimate

Hi David,

We never received our check yesterday.  Would you please advise what the status is.  Thank you.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone: 310.815.8855  Ext. 212
Fax:      310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

**Comprehensive Litigation Support**

**Los Angeles   New York**

2

Online_00042

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission. Thank you.

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Friday, May 22, 2020 9:34 AM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Cc:** richard@onlinesecurity.com
**Subject:** RE: OnlineSecurity Estimate

Good Morning Gentlemen

I was wondering if you have a status update?

Regards

David Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 3:02 PM
**To:** david@piusfelix.com
**Subject:** RE: OnlineSecurity Estimate

It's not a matter of money but just the process. We have the data already uploaded to our repository and are pushing to get it done by tomorrow. Will let you know our progress tomorrow morning.

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:     310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**

# OnlineSecurity ™

**Comprehensive Litigation Support**

**Los Angeles   New York**

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission. Thank you.

Online_00043

**From:** david@piusfelix.com <david@piusfelix.com>
**Sent:** Thursday, May 21, 2020 1:28 PM
**To:** 'Charlie Balot' <balot@onlinesecurity.com>
**Subject:** RE: OnlineSecurity Estimate

Mr. Balot

This is acceptable.  Mr. Nissani would like to know
if it is possible, for an additional fee of course, to have
this produced by tomorrow?

Regards

David Arnold

**From:** Charlie Balot <balot@onlinesecurity.com>
**Sent:** Thursday, May 21, 2020 1:51 PM
**To:** david@piusfelix.com
**Subject:** OnlineSecurity Estimate

Hi David,

Please find attached our estimate/work plan for your matter.  Please have the agreement signed and returned to me.  Our retainer deposit check of $1,925 can be messengered to the address in my signature block below.  I will be in my office until 3:15 today so if the messenger comes after that time tell them to place the envelope under our door.  Up until 3:15 please tell them to knock on our office door.

Regards,

Charlie Balot
CEO
**OnlineSecurity**

3000 S. Robertson Blvd., Suite 288
Los Angeles, California  90034
Phone:  310.815.8855  Ext. 212
Fax:     310.815.8808
Cell:    310.245.2903

**balot@onlinesecurity.com**
**www.onlinesecurity.com**


# OnlineSecurity ™

### Comprehensive Litigation Support

#### Los Angeles   New York

This email may contain material that is confidential and/or privileged information for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly

4

prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and then delete all copies of the transmission.  Thank you.

Online_00045

**Charlie Balot**

| | |
|---|---|
| **From:** | Richard Gralnik <richard@onlinesecurity.com> |
| **Sent:** | Thursday, May 28, 2020 11:13 AM |
| **To:** | david@piusfelix.com |
| **Cc:** | 'Charlie Balot' |
| **Subject:** | CNA National Warranty v RHM - Spreadsheets in production |

David,

I found out what happened to Excel spreadsheets
in the production.

I had assumed that a page-based TIFF production
would produce file types such as Excel spreadsheets
in native mode automatically so I did not explicitly
indicate this when I setup the production.  As a result
the 4 spreadsheets were produced as page image
TIFFs along with everything else instead of in native
mode.

I reran the production this morning with the Excel
files in native mode. It is ready for download from
▮▮▮▮▮▮▮ The name is PROD01 (as opposed to
the original PROD001).

I apologize for any problems this caused.

Richard


Richard Gralnik
V.P. of Forensic Investigations
**OnlineSecurity, Inc.**

3000 S. Robertson Blvd., Suite 288
Los Angeles, CA. 90034
Phone:  310.815.8855  Ext. 218
Fax:     310.815.8808
Cell:    310.569.5141

**richard@onlinesecurity.com**
**www.onlinesecurity.com**


# OnlineSecurity ™

**Comprehensive Litigation Support**

This email may contain material that is confidential and/or privileged information for the sole use of the intended
recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly

Online_00046

prohibited.  If you have received this transmission in error, please promptly notify the sender by reply email and
then delete all copies of the transmission.  Thank you.

**From:** david@piusfelix.com [mailto:david@piusfelix.com]
**Sent:** Thursday, May 28, 2020 9:53 AM
**To:** 'Charlie Balot'
**Cc:** richard@onlinesecurity.com
**Subject:** RE: OnlineSecurity Estimate

Gentlemen

We have received an email form our attorney indicating that there
were a number of excel spreadsheets which were attached to the information
we provided you which needed to be included in the ESI per the protocol.

I looked in the PST and indeed found four spreadsheets as email attachments.
I have attached them here.  (I added dates as there are some duplicates)

Please advise

Dave Arnold

See below:


Hello,

There are 4 Excel files that are present in the data set that were not provided in Native Format per the ESI
protocol.  Please provide the 4 Excel files in Native Format as soon as possible.

Thank you.

Sincerely,

Online_00047

# EXHIBIT C

| Source Bates | Duplicate Bates | Irrelevant Files | Total Duplicate/Irrelevant Files & Pages |
|---|---|---|---|
| RHM00001 | RHM01013 | | 1 file & 1 page |
| RHM00002-3 | RHM01159-60 | | 1 file & 2 pages |
| RHM00004-7 | RHM01155-1158 | | 1 file & 4 pages |
| RHM00008-9 | RHM01012 | | 1 file & 1 page |
| RHM00010-11 | RHM01140-41 | | 1 file & 2 pages |
| RHM00012-13 | RHM01138-39 | | 1 file & 2 pages |
| RHM00014-17 | RHM01182-85 | | 1 file & 4 pages |
| RHM00018-22 | RHM01008-1011 | | 1 file & 4 pages |
| RHM00023-24 | RHM01136-37 | | 1 file & 2 pages |
| RHM00025 | RHM01134 | | 1 file & 1 page |
| RHM00026-27 | RHM01007 | | 1 file & 1 page |
| RHM00028-29 | RHM01131-32 | | 1 file & 2 pages |
| RHM00030-31 | RHM01125 | | 1 file & 1 page |
| RHM00032 | RHM00723 | | 1 file & 1 page |
| RHM00033 | RHM00722 | | 1 file & 1 page |
| RHM00034-35 | RHM01123-24 | | 1 file & 2 pages |
| RHM00036-39 | RHM01003-1006 | | 1 file & 4 pages |
| RHM00040 | RHM00999 | | 1 file & 1 page |
| RHM00041-42 | RHM00997-998 | | 1 file & 2 pages |
| RHM00043-44 | RHM00995-996 | | 1 file & 2 pages |
| RHM00045 | RHM00994 | | 1 file & 1 page |
| RHM00046 | RHM00993 | | 1 file & 1 page |
| RHM00047 | RHM00928 | | 1 file & 1 page |
| RHM00048-49 | RHM00926-927 | | 1 file & 2 pages |
| RHM00050 | RHM01114 | | 1 file & 1 page |
| RHM00051 | RHM00878 RHM00916 | | 2 files & 2 pages |
| RHM00052-53 | RHM00914-915 | | 1 file & 2 pages |
| RHM00054-55 | RHM00912-913 | | 1 file & 2 pages |
| RHM00056 | RHM00911 | | 1 file & 1 page |
| RHM00057 | RHM00721 | | 1 file & 1 page |
| RHM00058-61 | RHM00900-902 | | 1 file & 3 pages |
| RHM00062-63 | RHM00898-899 | | 1 file & 2 pages |
| RHM00064 | RHM00720 | | 1 file & 1 page |
| RHM0065-66 | RHM00896-897 | | 1 file & 2 pages |
| RHM00067 | RHM00886 | | 1 file & 1 page |
| RHM00068 | RHM00882 | | 1 file & 1 page |
| RHM00069 | RHM00070 RHM01110 | | 2 files & 2 pages |
| RHM00071-73 | RHM00875-877 | | 1 file & 3 pages |
| RHM00074-76 | RHM01107-1109 | | 1 file & 3 pages |
| RHM00077-79 | RHM000872-874 | | 1 file & 3 pages |

| | | | |
|---|---|---|---|
| RHM00080-81 | RHM00871 | | 1 file & 1 page |
| RHM00082 | RHM00870 | | 1 file & 1 page |
| RHM00083 | RHM00869 | | 1 file & 1 page |
| RHM00084-87 | RHM00088-91<br>RHM00711-713<br>RHM00713-717 | | 3 files & 12 pages |
| RHM00092 | RHM00849 | | 1 file & 1 page |
| RHM00093 | RHM00848 | | 1 file & 1 page |
| RHM00094-95 | RHM01106 | | 1 file & 1 page |
| RHM00096 | RHM01164 | | 1 file & 1 page |
| RHM00097 | RHM00844 | | 1 file & 1 page |
| RHM00098 | RHM01161 | | 1 file & 1 page |
| RHM00099 | RHM01048 | | 1 file & 1 page |
| RHM00100 | RHM00843 | | 1 file & 1 page |
| RHM00101-102 | RHM00103-104<br>RHM00708-709<br>RHM00715-716 | | 2 files & 4 pages |
| RHM00105 | RHM00106<br>RHM00710<br>RHM00714 | | 3 files & 3 pages |
| RHM00107 | RHM00768 | | 1 file & 1 page |
| RHM00108 | RHM00765 | | 1 file & 1 page |
| RHM00109 | RHM00764 | | 1 file & 1 page |
| RHM00110 | RHM01016 | | 1 file & 1 page |
| RHM00111 | RHM01015 | | 1 file & 1 page |
| RHM00112 | RHM00763 | | 1 file & 1 page |
| RHM00113-114 | RHM00761-762 | | 1 file & 2 pages |
| RHM00115-116 | RHM00758-759 | | 1 file & 2 pages |
| RHM00117 | RHM00757 | | 1 file & 1 page |
| RHM00118-119 | RHM00751 | | 1 file & 1 page |
| RHM00120 | RHM00746 | | 1 file & 1 page |
| RHM00121 | RHM00745 | | 1 file & 1 page |
| RHM00122 | RHM00123<br>RHM00733<br>RHM00739 | | 3 files & 3 pages |
| RHM00124 | RHM00732 | | 1 file & 1 page |
| RHM00125 | RHM00727 | | 1 file & 1 page |
| RHM00126-127 | RHM00725-726 | | 1 file & 2 pages |
| RHM00128 | RHM00724 | | 1 file & 1 page |
| RHM00129 | RHM01014 | | 1 file & 1 page |

| | RHM00713,<br>RHM00719,<br>RHM00736,<br>RHM00742 | Doxsee Foster Signature | 4 files & 4 pages |
|---|---|---|---|
| | RHM00735,<br>RHM00741,<br>RHM00809,<br>RHM00810,<br>RHM00811,<br>RHM00812,<br>RHM00813,<br>RHM00814,<br>RHM00815,<br>RHM00816,<br>RHM00817,<br>RHM00818,<br>RHM00819,<br>RHM00820,<br>RHM00821,<br>RHM00822,<br>RHM00823,<br>RHM00824,<br>RHM00825,<br>RHM00826,<br>RHM00827,<br>RHM00828,<br>RHM00829,<br>RHM00830,<br>RHM00908,<br>RHM00909,<br>RHM00910,<br>RHM00929 | Blank Page | 28 files & 28 pages |
| | RHM00734,<br>RHM00740 | Marc's Signature | 2 files & 2 pages |
| | RHM00831,<br>RHM00845<br>RHM00850,<br>RHM00879<br>RHM00883,<br>RHM00887<br>RHM00917,<br>RHM01111<br>RHM01162 | Carlos's Signature | 9 files & 9 pages |
| | **TOTAL** | | Files - 124<br>Pages - 171 |

# EXHIBIT D

Tina M. Ezzell (SBN: 013825)
Gayathiri Shanmuganatha (SBN: 030745)
Jessica I. Brown (SBN: 034679)
TIFFANY & BOSCO, P.A.
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016-4237
Telephone:  (602) 452-2747
Facsimile:  (602) 255-0103
Email:  tme@tblaw.com
Email:  jib@tblaw.com
Email:  gs@tblaw.com

G. David Godwin, CA Bar No. 148272
david.godwin@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery St., Suite 2600
San Francisco, CA 94111
Telephone:  415.989.5900
Facsimile:  415.989.0932
*Attorneys for CNA National Warranty Corp.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RHN Incorporated, | Case No. CV-19-02960-GMS |
|                     Plaintiff/Counter-Defendant, | **LEAD CASE** |
|     v. | No. CV-19-04516-PHX-GMS |
| CNA National Warranty Corporation, et al.,, | |
|                    Defendant/Counter-Claimant. | **DECLARATION OF G. DAVID GODWIN IN SUPPORT OF CNA NATIONAL WARRANTY CORPORATION'S MOTION FOR SANCTIONS** |
| CNA National Warranty Corporation, | |
|            Plaintiff, | |
|     v. | |
| RHN, INC., a California et al., | |
|            Defendants. | |

1

2        I, David G. Godwin, declare as follows:

3        1.      I am an attorney admitted to practice before this Court *pro hac vice* and a

4   Partner in the law firm Squire Patton Boggs (US), LLP, counsel for CNA National Warranty

5   Corporation ("CNAN") in the above-entitled action.   The matters referred to in this

6   Declaration are based upon my personal knowledge and, if called and sworn as a witness, I

7   could and would competently testify as to each of them.

8        2.      On June 26, 2020, I had a telephonic conference with Ms. Kerry Garvis-

9   Wright, counsel for Defendants RHN, Inc., RHH Automotive, Inc., RHC Automotive, Inc.,

10  NBA Automotive, Inc., R & H Automotive Group, Inc., Hooman Nissani and Melody

11  Nissani.  Ms. Garvis-Wright informed me that Mr. Nissani wanted to pull out of the

12  scheduled July 30, 2020 mediation because of the proposed June 29, 2020 call to the Court's

13  Judicial Assistance to schedule a telephonic conference with Judge Snow.

14       3.      To avoid having the mediation canceled, CNAN deferred the June 29, 2020

15  call to the Court to schedule an ESI conference.

16       I declare under penalty of perjury under the laws of the United States that the

17  foregoing is true and correct.  Executed on September 21, 2020 in San Francisco, CA.

18

19

20

21                                      By: /s/ *G. David Godwin*

22                                          G. David Godwin, Esq.

23

24

25

26

27

28

# EXHIBIT E

| From | To/CC | Emails | Email Page Count | Full Family | Full Family Page Count |
|---|---|---|---|---|---|
| **CNA'S PRODUCTION** | | | | | |
| CNA | RHN (nissanibros.com) | 23 | 32 | 54 | 181 |
| RHN (nissanibros.com) | CNA | 52 | 98 | 89 | 647 |
| **TOTAL** | | **75** | **130** | **143** | **828** |
| **RHN'S PRODUCTIONS (MIDP002; MIDP004; PROD001) *INCLUDING* DUPLICATES** | | | | | |
| CNA | RHN (nissanibros.com) | 10 | 16 | 14 | 42 |
| RHN (nissanibros.com) | CNA | 16 | 29 | 24 | 93 |
| **TOTAL** | | **26** | **45** | **38** | **135** |
| **DIFFERENCE (RHN'S PRODUCTION & CNA'S PRODUCTION)** | | | | | |
| **TOTAL** | | **- 49** | **- 85** | **- 105** | **- 693** |

| From | To/CC | Emails | Email Page Count | Full Family | Full Family Page Count |
|---|---|---|---|---|---|
| **DOXSEE FOSTER'S PRODUCTION** | | | | | |
| Doxsee Foster | RHN (nissanibros.com) | 147 | 326 | 278 | 531 |
| RHN (nissanibros.com) | Doxsee Foster | 48 | 133 | 49 | 134 |
| Doxsee Foster | RHN (hoomanautomotive.com) | 14 | 26 | 18 | 30 |
| RHN (hoomanautomotive.com) | Doxsee Foster | 0 | 0 | 0 | 0 |
| **TOTAL** | | **209** | **485** | **345** | **695** |
| **RHN'S PRODUCTIONS (MIDP002; MIDP004; PROD001) *INCLUDING* DUPLICATES** | | | | | |
| Doxsee Foster | RHN (nissanibros.com) | 106 | 165 | 372 | 767 |
| RHN (nissanibros.com) | Doxsee Foster | 24 | 47 | 26 | 49 |
| Doxsee Foster | RHN (hoomanautomotive.com) | 10 | 20 | 20 | 32 |
| RHN (hoomanautomotive.com) | Doxsee Foster | 0 | 0 | 0 | 0 |
| **TOTAL** | | **140** | **232** | **418** | **848** |
| **DIFFERENCE (RHN'S PRODUCTION & DOXSEE FOSTER'S PRODUCTION)** | | | | | |
| **TOTAL** | | **- 69** | **- 253** | **73** | **-153** |

# EXHIBIT F

1  COREY B. LARSON
   PCC#66111; SB#022549
2  clarson@waterfallattorneys.com
   LAW OFFICES OF WATERFALL,
3    ECONOMIDIS, CALDWELL
     HANSHAW & VILLAMANA, P.C.
4  Williams Center, Suite 800
   5210 E. Williams Circle
5  Tucson, AZ 85711
   Telephone: (520) 790-5828
6
   KERRY GARVIS WRIGHT - State Bar No. 206320 (Admitted *Pro Hac Vice*)
7  kgarviswright@glaserweil.com
   MAKOA KAWABATA – State Bar No. 300450 (Admitted *Pro Hac Vice*)
8  mkawabata@glaserweil.com
   GLASER WEIL FINK HOWARD
9    AVCHEN & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
10 Los Angeles, California 90067
   Telephone: (310) 553-3000
11 Facsimile: (310) 556-2920

12 Attorneys for RHN Inc.; RHH Automotive, Inc.; RHC Automotive,
   Inc.; NBA Automotive, Inc.; R & H Automotive Group, Inc.;
13 Hooman Nissani; and Melody Nissani

14                 UNITED STATES DISTRICT COURT

15                     DISTRICT OF ARIZONA

16
   RHN Incorporated,                  No. CV-19-02960-PHX-GMS
17                                     **LEAD CASE**
              Plaintiff/Counter-Defendant,
18                                     No. CV-19-04516-PHX-GMS
   v.
19                                     Hon. G. Murray Snow
   CNA National Warranty Corporation, et
20 al.,                               **RHN INCORPORATED; RHH**
                                       **AUTOMOTIVE, INC.; RHC**
21            Defendant/Counter-Claimant.   **AUTOMOTIVE, INC.; NBA**
                                       **AUTOMOTIVE, INC.; R & H**
22 ────────────────────────────────  **AUTOMOTIVE GROUP, INC.;**
                                       **HOOMAN NISSANI; AND**
23 CNA National Warranty Corporation   **MELODY NISSANI'S INITIAL**
                                       **MIDP RESPONSES**
24            Plaintiff,

25 v.

26 RHN Incorporated, et al.,

27            Defendant.

28

                              1
1751393.1

1    TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

2        Pursuant to General Order 17-08, the above-identified parties (the "RHN

3    Parties") hereby submit their initial Mandatory Initial Discovery Pilot ("MIDP")

4    Responses.

5        As discovery has not begun and the RHN Parties have limited access to

6    information, the Responses set forth herein are not intended to represent the RHN

7    Parties' entire understanding of the facts and shall only serve as preliminary

8    disclosures of information until further information is ascertained.  The RHN Parties

9    reserve the right to amend all responses set forth herein.

10   **1. Persons Likely to Have Discoverable Information Relevant to Any Party's**

11   **Claims or Defenses, Their Contact Information, and a Fair Description of the**

12   **Nature of the Information the Persons Are Believed to Possess.**

13       Persons likely to have discoverable information relevant to the parties' claims

14   and defenses are as follow:

15   a.    Hooman Nissani

16         c/o Glaser Weil LLP

17         10250 Constellation Blvd., Floor 19

18         Los Angeles, CA 90067

19       Hooman Nissani is familiar with the negotiation of the Dealership Override

20   Agreement (the "Agreement"), the parties' profit-sharing agreement, and the Personal

21   Guaranty.  He is also familiar with the parties' compliance with the terms of the

22   Agreement, including, but not limited to, the dealerships' sales of CNA products.  Mr.

23   Nissani's anticipated testimony will be as follows:

24       Prior to the parties' execution of the Agreement, they agreed to several

25   modifications, including 1) the elimination of a minimum production guarantee and

26   shortfall fees for Tire & Wheel service contracts and GAP waivers (since such sales

27   did not contribute to the repayment of the advance issued under the Agreement); 2) a

28   quarterly, rather than monthly, production guarantee and accounting to CNA for

Glaser Weil

policies sold at the dealerships and a cure period in the event of deficiencies; and 3) an elimination of the obligation to pay certain shortfall fees upon termination of the Agreement and further clarification of the parties' agreement regarding shortfall fees. CNA pressured Mr. Nissani to execute the Agreement before the end of the calendar year 2017.

On December 29, 2017, Nissani spoke by phone with Scott Magnano, Assistant Vice President of Financial Planning & Analysis for CNA, regarding the changes to the Agreement. Mr. Magnano confirmed to Mr. Nissani that the Agreement contained mistakes because it had been cut-and-pasted from another agreement and was CNA's first deal with an automotive retailer on such a large scale. The changes Mr. Magnano and Mr. Nissani agreed to were memorialized by Mr. Nissani's handwritten edits interlineated in the Agreement as set forth in Exhibit 1 to the Complaint. Mr. Nissani sent the executed signature page to Mr. Magnano via email on December 29, 2017, as Mr. Magnano had requested. Mr. Magnano told Mr. Nissani he wanted to have Mr. Nissani's signature as soon as possible because he and other CNA representatives were leaving the office early for the New Year's weekend and wanted to ensure that the deal was finalized before the end of the year. Mr. Nissani left a hard copy of the Agreement with the handwritten interlineated agreed-to changes with a dealership receptionist, to be picked up by a representative of CNA and incorporated into a "clean" typewritten version of the agreement. Mr. Magnano and Mr. Nissani discussed the pickup of the original document during their phone call.

The changes to the Agreement were confirmed once again at a "launch" event held in or about early January 2018 at the office of Rayan Nissani at the Nissani Bros. Auto Mall for the purpose of enabling salespeople at the Dealerships to begin selling the products. At the launch event, Hooman and Rayan Nissani, Mr. Bolivar, and several CNA representatives, including Jay Sharpnack (National Sales Manager), Marc Thorson (Agency Development Manager for CNA), Alan Miller (Senior Vice

President of Sales for CNA), and others discussed, point by point, the changes to the
Agreement that had been agreed to before the dealerships began selling CNA's
products.  They reviewed the terms of the Agreement, including the changes Mr.
Nissani and Mr. Magnano had discussed and agreed to, in order to ensure a clear
understanding between the parties as the Dealerships began to sell CNA's products.
They also discussed details such as hourly repair rates and the makes of cars that
would be covered under the CNA policies.

Prior to the execution of the Agreement, CNA agreed that all profits collected
under the parties' Agreement would be deposited into an account at a financial
institution of Mr. Nissani's choosing so the funds would bear preferential rates of
return, as Mr. Nissani would be in control of the investments.  Mr. Nissani informed
CNA that Woodforest National Bank and RBC were his chosen institutions.  At the
launch meeting in January 2018, Mr. Nissani reiterated the approved financial
institutions into which proceeds from the sales of CNA policies were to be deposited
and that he was to have investment authority over the funds in the accounts.
However, CNA did not contact Mr. Nissani regarding the details associated with
setting up accounts with these banks, or even provide Mr. Nissani regular updates
regarding the funds.  He has not seen any bank statements for Hailey Reinsurance
Company, LTD (the entity set up to house the proceeds of the sales), which accounts,
upon information and belief, are in the possession of, or under the control of, CNA.
As a result, he has been deprived of control of the investment of the funds placed into
these accounts and the preferential returns agreed upon by the parties.

The dealerships consistently met their obligations to sell VSCs and remit all
amounts due to CNA under the Agreement.  A market shift occurred in or about
September 2018, during which time consumers began leasing vehicles (rather than
purchasing them) at higher rates, making it more difficult for the Dealerships to meet
production guarantees of VSCs.  At that time, CNA agreed to reduce the minimum
production guarantee for VSCs and in exchange, the term of the Agreement would be

1   extended.  However, CNA breached the Agreement by CNA's purported termination.

2       The financial statements Mr. Nissani provided in connection with the Personal

3   Guaranty contain accurate information.  He did not represent that he personally

4   owned the real property listed on the Statement of Assets, Liabilities & Net Worth (as

5   opposed to through limited liability companies) and the statement, on its face, shows

6   his percentage ownership for each property.

7

8   b.      Rayan Nissani

9           5750 Mesmer Ave., Ste C

10          Culver City, CA 90230

11      Rayan Nissani is familiar with the negotiation of the Agreement and the

12  parties' compliance with its terms, including, but not limited to, the dealerships' sales

13  of CNA products.  He attended all meetings prior to the execution of the Agreement.

14  He attended the launch event and will testify regarding that meeting and other

15  communications between the parties.  He also attended several meetings subsequent

16  to the execution of the Agreement, including one in Las Vegas in March 2018 (during

17  the National Automotive Dealers' Association conference) with Mr. Bolivar, Mr.

18  Sharpnack of CNA, and, others, where the parties discussed the modified terms of the

19  Agreement.

20

21  c.      Carlos Bolivar

22          Doxsee Foster & Associates

23          600 Hampshire Road #210

24          Westlake Village, CA 91361

25          carlos@doxseefoster.com

26      Mr. Bolivar is familiar with the negotiation of the Agreement and the parties'

27  compliance with the terms of the Agreement, including, but not limited to, the

28  dealerships' sales of CNA products.  He acted as an intermediary between Mr.

Glaser Weil

1  Nissani and CNA's agents and participated in meetings where the terms of the

2  Agreement were discussed and agreed upon.  He attended several meetings, both

3  before and after the execution of the Agreement, including the launch event where

4  CNA representatives confirmed the amended terms of the Agreement as agreed upon

5  on December 29, 2017 and the March 2018 Las Vegas meeting.  He also is familiar

6  with the parties' agreement to deposit the premiums collected from sales of CNA

7  policies into accounts at the financial institution of Mr. Nissani's choosing and share

8  in the returns on the investment of those funds.

9

10  d.      Scott Magnano

11         CNA National Warranty Corporation

12         4150 N Drinkwater Blvd Ste 400

13         Scottsdale, AZ 85251

14         Mr. Magnano is familiar with the parties' negotiations with respect to the

15  Agreement and the parties' agreement to deposit the premiums collected from sales of

16  CNA policies into accounts at the financial institution of Mr. Nissani's choosing and

17  share in the returns on the investment of those funds.  He spoke directly with Mr.

18  Nissani the day the Agreement was executed about the modifications to the

19  Agreement.

20

21  e.      Jay Sharpnack

22         CNA National Warranty Corporation

23         4150 N Drinkwater Blvd Ste 400

24         Scottsdale, AZ 85251

25         Mr. Sharpnack is familiar with the parties' negotiations with respect to the

26  Agreement and the parties' agreement to deposit the premiums collected from sales of

27  CNA policies into accounts at the financial institution of Mr. Nissani's choosing and

28  share in the returns on the investment of those funds.  He told Mr. Nissani that CNA

SUPPLEMENTAL MIDP RESPONSES

1751393.1

1   would place the proceeds of the dealerships' sales of CNA products into an account at

2   the financial institution of Mr. Nissani's choosing.  He later represented that CNA

3   would provide Mr. Nissani with a written document setting forth the terms of the

4   parties' profit-sharing agreement establishing that the money would be invested as

5   Mr. Nissani directed.

6

7   f.      Marc Thorson

8           CNA National Warranty Corporation

9           4150 N Drinkwater Blvd Ste 400

10          Scottsdale, AZ 85251

11          Mr. Thorson is familiar with the parties' negotiations with respect to the

12  Agreement between RHN and CNA and the parties' agreement to deposit the

13  premiums collected from sales of CNA policies into accounts at the financial

14  institution of Mr. Nissani's choosing and share in the returns on the investment of

15  those funds.  He participated in discussions with Mr. Nissani with respect to the terms

16  of the Agreement and the subsequent modification to lower the minimum production

17  guarantee.

18

19  g.      Alan Miller

20          CNA National Warranty Corporation

21          4150 N Drinkwater Blvd Ste 400

22          Scottsdale, AZ 85251

23          Mr. Miller is familiar with the parties' negotiations with respect to the

24  Agreement and the parties' agreement to deposit the premiums collected from sales of

25  CNA policies into accounts at the financial institution of Mr. Nissani's choosing and

26  share in the returns on the investment of those funds.  He told Mr. Nissani that CNA

27  would place the proceeds of the dealerships' sales of CNA products into an account at

28  the financial institution of Mr. Nissani's choosing.  He later represented that CNA

**Glaser Weil**

1 would provide Mr. Nissani with a written document setting forth the terms of the

2 parties' profit-sharing agreement establishing that the money would be invested as

3 Mr. Nissani directed.

4

5 h.    John Loughlin

6        CNA National Warranty Corporation

7        4150 N Drinkwater Blvd Ste 400

8        Scottsdale, AZ 85251

9        Mr. Loughlin is familiar with the parties' negotiations with respect to the

10 Agreement and the parties' agreement to deposit the premiums collected from sales of

11 CNA policies into accounts at the financial institution of Mr. Nissani's choosing and

12 share in the returns on the investment of those funds.  He participated in discussions

13 with Mr. Nissani with respect to the terms of the Agreement.

14

15 i.    David Arnold

16       c/o Glaser Weil LLP

17       10250 Constellation Blvd., Floor 19

18       Los Angeles, CA 90067

19       Mr. Arnold is familiar with the contents of Mr. Nissani's financial statements

20 and the parties' communications regarding the same.  He is also familiar with the

21 parties' negotiations with respect to the Agreement and the modification of the terms

22 thereof.  He also provides IT support to the RHN Parties.

23

24 j.    Blanca Vargas

25       c/o Glaser Weil LLP

26       10250 Constellation Blvd., Floor 19

27       Los Angeles, CA 90067

28       Ms. Vargas maintains records for the dealerships and is generally familiar with

8

the dealerships' compliance with the terms of the Agreement with respect to remitting funds and furnishing documents to CNA.

k.      Vannak Kong

     c/o Glaser Weil LLP

     10250 Constellation Blvd., Floor 19

     Los Angeles, CA 90067

     Ms. Kong maintains records for the dealerships and is generally familiar with the dealerships' compliance with the terms of the Agreement with respect to remitting funds and furnishing documents to CNA.

l.      Maria Virrueta

     c/o Glaser Weil LLP

     10250 Constellation Blvd., Floor 19

     Los Angeles, CA 90067

     Ms. Virrueta maintains records for the dealerships and is generally familiar with the dealerships' compliance with the terms of the Agreement with respect to remitting funds and furnishing documents to CNA.

**2. The Names and, if Known, the Addresses and Telephone Numbers of All Persons Who the RHN Parties Believe Have Given Written or Recorded Statements Relevant to Any Party's Claims or Defenses.**

     The RHN Parties are unaware of any written or recorded statements relevant to the parties' claims and defenses.

**3. List of Documents, Electronically Stored Information ("ESI"), Tangible Things, Land, or Other Property Known by the RHN Parties to Exist, Whether or Not in The RHN Parties' Possession, Custody or Control, that They Believe**

SUPPLEMENTAL MIDP RESPONSES

**May Be Relevant to Any Party's Claims or Defenses.**

   a.  Letter re: Investment Manager options (RHN_PROD_000001-02);

   b.  Personal Guaranty and Suretyship Agreement (RHN_PROD_000003-05);

   c.  E-Contracting Agreement and Indemnity Agreement (RHN_PROD_00006-68; 84-85);

   d.  March 4, 2019 Email regarding amendment to Agreement (RHN_PROD_000069-83);

   e.  Agreement for Administrative Services and Supplement (RHN_PROD_000086-94);

   f.  Records related to CNA product sales by Nissani Bros. Acura (RHN_PROD_000095-401);

   g.  Records related to CNA product sales by Nissani Bros. Chevrolet (RHN_PROD_000402-965);

   h.  Records related to CNA product sales by Nissani Bros. Chrysler Dodge Jeep Ram (RHN_PROD_000966-2109);

   i.  Records related to CNA product sales by Nissani Bros. Hyundai (RHN_PROD_002110-2549);

   j.  Records related to CNA product sales by Nissani Bros. Nissan (RHN_PROD_002550-3559);

   k.  Letter re: Overview of fee structure between the RHN Parties, Doxsee Foster, and CNA (RHN_PROD_003560);

   l.  Dealership Override Agreement with Advance Payment;

   m.  Email and text message correspondences between Hooman Nissani and CNA agents and representatives;

   n.  Email and text message correspondences between Hooman Nissani and Doxsee Foster agents and representatives;

   o.  Email and text message correspondences between CNA agents and representatives, and Doxsee Foster agents and representatives;

1751393.1

Glaser Weil

1    p.  Warehousing Agreements between RHN Parties and CNA; and

2    q.  Records related to CNA's treatment of funds collected from policy sales.

3

4  **4. Facts and Legal Theories Relevant to Claims or Defenses.**

5    a. Factual Background Relevant to RHN's Claims Against CNA.

6        RHN and CNA reached an agreement with respect to two distinct aspects of

7  RHN's sale of CNA's Vehicle Service Contracts ("VSCs") to automobile purchasers

8  through RHN's affiliated dealerships (the "Dealerships").  One aspect addressed the

9  parties' treatment of the premiums paid by the purchasers of the CNA products sold at

10 the Dealerships.  The other (which was governed by the Agreement) addressed

11 CNA's advance to RHN of $5 million against RHN's commissions on sales of VSCs.

12       In the months leading up to December 2017, the parties discussed the

13 possibility of RHN selling CNA automobile service policies to consumers at the

14 Dealerships.  In order to induce RHN to sell CNA's VSCs, CNA offered to advance

15 RHN $5 million and grant the Dealerships a commission on each VSC sold.  CNA

16 proposed that RHN and the Dealerships could pay back the $5 million advance over

17 time.  This would be achieved by applying the commission that would otherwise be

18 due to the Dealerships for the sale of each VSC (specifically, $267 for each VSC

19 sold) against the outstanding advance balance.

20       The parties further agreed that the purchasers' premiums would be sent to

21 CNA, and of the purchase amounts, CNA would collect the cost of the product(which

22 includes a flat $170 administrative fee and an 18% "no-chargeback" fee), then deposit

23 the remaining funds in an investment account (or accounts) at a financial institution

24 identified by Mr. Nissani.  The funds were then to be invested for the purpose of the

25 parties sharing in the proceeds of the return on investment (ROI) of the funds.  In

26 order to maximize the return on the deposited funds, Mr. Nissani informed Jay

27 Sharpnack, National Sales Manager for CNA, that CNA was to deposit the funds into

28 accounts at Woodforest National Bank or RBC.

The draft of the Agreement that CNA circulated to Mr. Nissani in or about December 2017 provided that that RHN would sell several types of automobile-related warranties other than the VSCs, including Tire & Wheel service contracts and GAP waivers.  The draft Agreement also provided for monthly sales requirements and penalties if RHN did not reach those requirements.  However, RHN and CNA only discussed and agreed to the sale of VSCs.  They also discussed quarterly sales quotas, as opposed to monthly sales quotas.

When Mr. Nissani received the draft Agreement, which contained terms that were at odds with what had been discussed with CNA, he spoke by telephone with Scott Magnano, Assistant Vice President of Financial Planning & Analysis for CNA. During that call, the parties agreed to several modifications, including: 1) the elimination of a minimum production guarantee and shortfall fees for Tire & Wheel service contracts and GAP waivers (since such sales did not contribute to the repayment of the advance issued under the Agreement); 2) a quarterly, rather than monthly, production guarantee and accounting to CNA for policies sold at the dealerships and a cure period in the event of deficiencies; and 3) an elimination of the obligation to pay certain shortfall fees upon termination of the Agreement and further clarification of the parties' agreement regarding shortfall fees.  Mr. Magnano assured Mr. Nissani that the changes were acceptable and asked Mr. Nissani to send the executed signature pages to the Agreement to him as soon as possible so that the deal could be booked before the end of the year, since he and other CNA representatives were leaving the office early for the New Year's weekend and wanted to ensure that the deal was finalized.  Mr. Magnano and Mr. Nissani discussed the pickup of the original document during their phone call.

Mr. Nissani recorded the changes that he and Mr. Magnano agreed to on a copy of the draft Agreement, and, on December 29, 2017 (the last business day of the 2017 calendar year), he signed that version of the Agreement and, as instructed to do, he sent the executed and notarized signature pages to Mr. Magnano by email.  Mr.

SUPPLEMENTAL MIDP RESPONSES

1751393.1

1    Nissani also arranged to have the original, notarized signature pages, along with a

2    copy of the Agreement, interlineated with the handwritten changes that he and Mr.

3    Magnano discussed and agreed to, left with a receptionist for the dealership for a

4    CNA representative to pick up.  Mr. Nissani understood that CNA would provide a

5    clean, typewritten copy of the Agreement, incorporating the handwritten changes that

6    he had made.

7         Following receipt of the executed signature pages to the Agreement, on or

8    about January 2, 2018, CNA wired the $5 million advance called for by the

9    Agreement to RHN.  In or about early January 2018, the RHN Parties and CNA held

10   a "launch" event at the office of Rayan Nissani at the Nissani Bros. Auto Mall for the

11   purpose of enabling salespeople at the Dealerships to begin selling the products.

12        At the launch event, Hooman and Rayan Nissani, Mr. Bolivar, and several

13   CNA representatives, including Jay Sharpnack (National Sales Manager), Marc

14   Thorson (Agency Development Manager for CNA), Alan Miller (Senior Vice

15   President of Sales for CNA), and others, reviewed the terms of the Agreement,

16   including the changes Mr. Nissani and Mr. Magnano had discussed and agreed to, in

17   order to ensure a clear understanding between the parties as the Dealerships began to

18   sell CNA's products.  They also discussed details such as hourly repair rates and the

19   makes of cars that would be covered under the CNA policies.  At this meeting, Mr.

20   Nissani again reiterated the approved financial institutions into which proceeds from

21   the sales of CNA policies were to be deposited.

22        After the launch event, the Dealerships began to sell CNA products to their

23   customers, performing under the Agreement.  The Dealerships sold VSCs to

24   automobile purchasers and, at first, the Dealerships met and even exceeded the

25   quarterly minimum production guaranty.  CNA received the premiums paid by

26   purchasers and should have applied RHN's commissions from the sales against the

27   outstanding advance balance, as provided by the Agreement.  Several months later, in

28   or about September 2018, due to changes in the automobile sales industry, it became

13

1751393.1

clear that the quarterly minimum sales requirement would be difficult to achieve.  As such, after discussions, CNA and RHN agreed to reduce the minimum production of VSCs the dealerships were required to sell and extend the term of the Agreement. RHN asked for an accounting of the funds it was entitled to and inquired of CNA what had been done with the funds that were supposed to have been deposited with the financial institutions Mr. Nissani had identified.  However, CNA refused to provide RHN with such information, claiming that the Dealerships had fallen behind on their obligations and ultimately purported to terminate the Agreement in or about March 2019.

b. Factual Background Relevant to the RHN Parties' Defenses.

The dealerships complied with the terms of the Agreement by selling the required number of VSCs and remitting the proceeds to CNA, as evidenced by the documents produced concurrently herewith.

With respect to the Statement of Assets, Liabilities & Net Worth, the information set forth therein is accurate.  Mr. Nissani holds all the properties listed on the statement through legal entities, or as a partner therein, except for the Cielo Drive property, which he owns personally.  The proportional share of ownership in each property is listed, as are any encumbrances.

c. Legal Theories Relevant to the RHN Parties' Claims and Defenses.

1. RHN's Claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment.

A valid and enforceable contract exists where there is "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co., Inc. v. Homes & Sons Const. Co., Inc.*, 112 Ariz. 392, 394 (1975).  "Under Arizona law, a material breach occurs when (1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions or (2) fails to do something required by the contract which is so important to the contract that the breach defeats the very purpose of the contract."

*Dialog4 Sys. Eng'g GmbH v. Cir. Research Labs, Inc.*, 622 F. Supp. 2d 814, 822 (D.

Ariz. 2009) (internal citations omitted); *see also* RAJI (Civil) 5th Contract 9 (Failure

of Consideration (Material Breach); Restatement (Second) of Contracts § 417 (citing

circumstances to determine whether a material breach has occurred).  In Arizona, a

covenant of good faith and fair dealing is implied in every contract.  *Rawlings v.*

*Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986).  The implied covenant exists

to ensure that "neither party will act to impair the right of the other to receive the

benefits which flow from their agreement or contractual relationship." *Id.*  A breach

of the implied covenant of good faith and fair dealing includes (1) the existence of a

contract, and (2) the exercise of express discretion in a way inconsistent with the

other party's reasonable expectations or actions taken in ways not expressly excluded

by the contract's terms but which nevertheless bear adversely on the party's

reasonably expected benefits of the bargain." *Sun City Pet Mkt. LLC v. Honest*

*Kitchen Inc.*, CV-17-00121-PHX-DGC, 2017 WL 2255400, at *5 (D. Ariz. May 23,

2017) (alterations in original) (quoting *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420,

424, 46 P.3d 431, 435 (Ct. App. 2002)).  "A party may breach the implied covenant

even in the absence of a breach of an express provision of the contract by denying the

other party the reasonably expected benefits of the agreement." *Nolan v. Starlight*

*Pines Homeowners Ass'n,* 216 Ariz. 482, 489 (App. 2007).  In order to establish a

claim for unjust enrichment, RHN must show that (1) RHN conferred a benefit upon

CNAN, (2) CNAN benefited at RHN's expense, and (3) it would be unjust to allow

CNAN to keep the benefit. *Arnold & Associates, Inc. v. Misys Healthcare Sys., a div.*

*of Misys, PLC*, 275 F. Supp. 2d 1013, 1025 (D. Ariz. 2003). "Unjust enrichment

occurs when one party has and retains money or benefits that in justice and equity

belong to another." *Trustmark Ins. Co. v. Bank One*, *Ariz.*, 202 Ariz. 535, 541, 48

P.3d 485, 491 (Ct. App. 2002).

CNA agreed that, as part of the parties' overall agreement for the Dealerships

to sell CNA products, the purchase amounts would be sent to CNA, and of the

purchase amounts, CNA would collect the cost of the product (which includes a flat $170 administrative fee and an 18% "no-chargeback" fee), then deposit the remaining funds in an investment account (or accounts) identified by Mr. Nissani.  The funds were then to be invested for the purpose of the parties sharing in the proceeds of the return on investment (ROI) of the funds.  CNA failed to do so despite Mr. Nissani's insistence, and rather than requesting information regarding the account to be used, instead placed the funds into an unknown account.

Not only was CNA's refusal to place the funds into accounts at the institutions identified by Mr. Nissani or remit a share of the profits on the return on the funds a breach of the express terms of the parties' agreement, it also diminished the return that RHN could expect to realize.  The specific amount of return on investment was not an express term of the parties' agreement; however, Mr. Nissani chose the accounts based on the favorable interest rates they offered and agreed to let CNA receive the funds because he believed CNA would comply with the terms of the agreement to deposit the funds into his preferred institutions.  CNA's refusal to place the funds in the account bearing the favorable rate of return and remit a share of the profits realized at that rate denied RHN the benefit of the parties' bargain was therefore was a breach of the implied covenant of good faith and fair dealing.  This was both a breach a material term of the agreement the dealerships were performing under, and a decision that deprived RHN of the benefit of the parties' bargain because the funds are not bearing the preferential rate of return they would have, had they been placed into the account identified by Mr. Nissani.

The dealerships did not breach the terms of the Agreement because, as described *supra*, they complied with their obligations, and to the extent that they did not, their performance was excused by CNA agreeing to lower the production guarantee.

However, CNA has been unjustly enriched in an amount unknown – Mr. Nissani has not seen the bank statements for the entity set up to collect the proceeds

of the sales of CNA products sold at the dealerships (despite his several requests to see such information), and, upon information and belief, access to such accounts is controlled by CNA.

### 2. RHN's Defenses to Breach of Contract.

As set forth *supra*, the RHN Parties contend that the terms of the Agreement are materially different than the terms CNA claims.  As such, the RHN Parties' performance under the legally operative terms serves as a defense to CNA's claims under the terms CNA claims govern.

### 3. RHN's Defenses to Intentional and Negligent Misrepresentation.

The elements of intentional misrepresentation are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury. *Frazer v. Millennium Bank, N.A.*, 2010 WL 4579799, at *3 (D.Ariz. Oct. 29, 2010) (*citing Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 229 P.3d 1031, 1033–1034 (Az.Ct.App.2010).  The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.  *Mur–Ray Mgmt. Corp. v. Founders Title Co.*, 169 Ariz. 417, 422–24 (App. 1991).

The information provided on Mr. Nissani's Statement of Assets, Liabilities & Net Worth is true, negating RHN's claim of falsity.  CNA will be unable to prove that the Statement of Assets, Liabilities & Net Worth contained misrepresentations, in part because it never purported that Mr. Nissani personally owned the real properties listed, or that the encumbrances claimed by CNA substantially hinder the value of the

1   properties beyond the amounts stated therein.  Further, even if the figures are slightly

2   inaccurate, such inaccuracies are irrelevant, because the amount in controversy (the

3   $5 million advance) is a fraction of the total value of the properties listed, and CNA

4   would not have changed its decision to issue the advance or enter into the Agreement.

5   **5. Computation of Each Category of Damages.**

6           Computation of RHN's damages will require discovery and as such RHN

7   cannot compute such damages at this time.  As RHN has alleged, it has been denied

8   access to the records of the amounts collected and proceeds owed to it in connection

9   with its sale of CNA products, and only by having access to that information, which is

10  in the possession of CNA, can RHN compute its damages.

28  ///

**Glaser Weil**

**6. Identification and Description of Any Insurance or Other Agreement Under Which an Insurance Business or Other Person or Entity May Be Liable to Satisfy All or Part of a Possible Judgment in the Action or to Indemnify or Reimburse a Party For Payments Made By the Party to Satisfy the Judgment.**

The RHN Parties are unaware of any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment.

DATED:  November 25, 2019

Respectfully submitted,

LAW OFFICES OF WATERFALL, ECONOMIDIS, CALDWELL HANSHAW & VILLAMANA, P.C.

By:   /s/ Corey B. Larson
COREY B. LARSON
Attorneys for RHN Inc., a California Corporation dba Nissani Brothers Nissan; RHH Automotive, Inc., a California Corporation dba Nissani Brothers Hyundai; RHC Automotive, Inc., a California Corporation, dba Nissani Brothers Jeep Chrysler Dodge; NBA Automotive, Inc., a California Corporation, dba Nissani Brothers Chevrolet; R&H Automotive Group, Inc., a California Corporation, dba Nissani Brothers Acura; Hooman Nissani; and Melody Nissani

DATED:  November 25, 2019

GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP

By:   /s/ B. Makoa Kawabata
KERRY GARVIS WRIGHT
B. MAKOA KAWABATA
Attorneys for RHN Inc., a California Corporation dba Nissani Brothers Nissan; RHH Automotive, Inc., a California Corporation dba Nissani Brothers Hyundai; RHC Automotive,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Inc., a California Corporation, dba
Nissani Brothers Jeep Chrysler Dodge;
NBA Automotive, Inc., a California
Corporation, dba Nissani Brothers
Chevrolet; R&H Automotive Group,
Inc., a California Corporation, dba
Nissani Brothers Acura; Hooman
Nissani; and Melody Nissani

**Glaser Weil**

1751393.1

1

## <u>CERTIFICATE OF SERVICE</u>

2

3    I hereby certify that on November 25, 2019, I electronically transmitted the
foregoing **SUPPLEMENTAL MIDP RESPONSES** to counsel for all parties as

4    follows via electronic mail:

5
Tina M. Ezzell, Esq.
6    Gaya Shanmuganatha, Esq.
Jessica I. Brown, Esq.
7    TIFFANY & BOSCO, P.A.
Seventh Floor Camelback Esplanade II
8    2525 E Camelback Road
Phoenix, AZ 85016
9
TME@tblaw.com
10   GS@tblaw.com
JIB@tblaw.com
11   *Attorneys for CNA Nat'l Warranty*
*Corp.*
12

13

14                                                    /s/ B. Makoa Kawabata
B. Makoa Kawabata
15

16

17

18

19

20

21

22

23

24

25

26

27

28